MORTON A. GLAZER, trustee, & another *vs.* ISADORE J. SILVERMAN, trustee, & another.

Middlesex.    March 7, 1968. — April 9, 1968.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Contract,* Separation agreement.  *Divorce,* Separation agreement.

A husband's obligation under a separation agreement made with his wife and trustees, prior to her receiving a divorce, to pay a certain weekly sum for her "care, support and maintenance" "as long as . . . [she] remains unmarried" became unenforceable after the divorce upon her marriage to another man and later receiving in New York an annulment of her remarriage and an order in the annulment decree pursuant to § 1140-a of the Civil Practice Act of New York that she should receive a certain sum from her second husband in periodic payments "as and for her support and maintenance."

PETITION filed in the Probate Court for the county of Middlesex on July 28, 1966.

The case was heard by *Sullivan,* J.

*Jules E. Angoff* for the petitioners.

*Isadore J. Silverman* for the respondents.

WHITTEMORE, J.   This petition in equity in the Probate Court seeks to enforce the obligations of a divorced husband to support his former wife under a trust agreement made in this Commonwealth on August 10, 1956, prior to the divorce and not shown to have been embodied in the divorce decree. The agreement was to pay for "the care, support and maintenance" of the wife, "twenty-five dollars . . . each and every week as long as . . . [she] remains unmarried." The judge dismissed the petition, having found that the remarriage of the wife, although later annulled, had terminated the obligation and also that the wife's circumstances had substantially changed. The findings show that after receiving a divorce in France, the wife, on January 31, 1963, in Virginia, married Frank Schoonmaker. She left him in August, 1963, moved to New York, and on December 7,

Glazer *v.* Silverman.

1965, secured an annulment of the marriage on the ground
that he was married to another woman.  The wife had re-
ceived temporary alimony from Schoonmaker and the
annulment decree provided that she was to receive $33,000
in periodic payments "as and for her support and mainte-
nance."

The alimony was awarded under § 1140–a of the Civil
Practice Act[1] which provided, "When an action is brought
to annul a marriage or to declare the nullity of a void mar-
riage, the court may give such direction for support of the
wife by the husband as justice requires."

It was not error to dismiss the petition.

We agree with the petitioners that the substantial change
found by the judge in the wife's financial circumstances did
not empower the court to alter the contract of the parties.
See *Schillander* v. *Schillander*, 307 Mass. 96.  As pointed out
in that case, the power of the court to alter a decree of ali-
mony is not involved in the enforcement of such an agree-
ment.   Compare *Robbins* v. *Robbins*, 343 Mass. 247, 252
(a second marriage and its annulment may be a change in
circumstances, although not so shown in that case, justify-
ing a modification of an alimony decree).

We agree on other grounds, however, that the divorced
husband has a full defence to the enforcement of the contract
obligation to support.  Although as between the parties to it
the ceremonial marriage in Virginia was void (see Va. Code,
tit. 20, § 20–43), it was not without effect on third parties
and the marriage and its consequences had a significant
effect upon the obligations of the first husband.  *Gerrig* v.
*Sneirson*, 344 Mass. 518, 520–521.   *Gaines* v. *Jacobson*,
308 N. Y. 218.   *Denberg* v. *Frischman*, 24 App. Div. 2d
(N. Y.) 100, affirmed without opinion, 17 N. Y. 2d 778 (see
dissent, 779).  *Spatz* v. *Spatz*, 10 Misc. 2d (N. Y.) 1.   See
41 Cornell L. Q. 141–147;  68 Harv. L. Rev. 1076;  29 So.
Cal. L. Rev. 367, 368;  8 Vand. L. Rev. 909.   *Contra, Sutton*
v. *Leib*, 199 F. 2d 163 (applying Ill. law);  *Reese* v. *Reese*,

---

[1] Now N. Y. Consol. Laws, Domestic Relations Law, § 236, with some
changes in wording.

192 So. 2d 1 (Fla.); *DeWall* v. *Rhoderick*, 258, Iowa 433, 439–440; *Johnson County Natl. Bank & Trust Co.* v. *Bach*, 189 Kans. 291; *Minder* v. *Minder*, 83 N. J. Super. 159.

The avowed purpose of the agreement sought to be enforced was to supply "care, support and maintenance." A de facto marriage relationship while it continues is reasonably calculated to furnish the wife with these things. The bigamous marriage in Virginia provided support for the wife until the annulment decree and furnished the basis for support from Schoonmaker thereafter.

The statement in *Callow* v. *Thomas*, 322 Mass. 550, 555–556, that a bigamous marriage is "no marriage at all" does not mean that it was an event of no significance as to third persons. No more than with a voidable marriage can action in recognition that it was illegal "obliterate the past and make events unreal" (Cardozo, C.J., in *American Sur. Co.* v. *Conner*, 251 N. Y. 1, 9, referring to a voidable marriage, quoted in the *Callow* case). See 8 Vand. L. Rev. 909 for a summary of some of the effects of a void marriage that have been judicially recognized.

In the *Gerrig* case we held that the ceremony of a void marriage terminated the first husband's obligation under a trust agreement similar to that in suit. The wife had actively participated in the illegality that made the second marriage void. There had been an express purpose to avoid a statutory disability applicable to the man. The opinion states that the first husband is entitled to rely upon the appearance of things, and that there should not be an intermittent obligation reinstated upon disclosure of circumstances to which the husband was not privy and which he has no reasonable means of discovering. "Particularly should this be so where those circumstances include . . . [the wife's] purpose in going to Rhode Island upon which she now relies as preventing validation of the marriage and support from the second husband."

There is equally strong ground to give effect in this case to the void ceremonial marriage, for the wife, by seeking annulment in New York, has acquired the right to support

from the second husband. The *Gaines* case, *supra*, applies substantially the principles stated in the *Gerrig* case to facts similar to those now before us, noting that because of the New York statute the wife had the right to alimony from the bigamous second husband although alimony had not been awarded. That court more recently in the *Denberg* case, *supra*, has held that the ceremonial marriage is determinative even where there is no such statute.

In the *Gaines* opinion (308 N. Y. at 224) the court said: "[T]here is no more reason [in view of § 1140-a] to revive the obligation of the first husband — a stranger to the annulment — than there would be if the remarriage were terminated by divorce. The 'purposes of justice' now dictate that his discharge, effected when the wife goes through a second marriage, be permanent, that he be not required to stand perpetually ready to resume her support should the remarriage some day be annulled."

It has been urged that equitable considerations must be weighed in determining liability in such a case as this. The note in 29 So. Cal. L. Rev. 367, 368, observes: "underlying any decision in this field should be an attempt to provide adequate protection for *both* the husband and wife. . . . [There is danger through the mechanical application of principles either] in renewing the innocent first husband's obligation years after his wife's 'remarriage' . . . [or that] the . . . wife may lose her right to support through a void marriage lasting but a few days. Such results should be avoided." See as to available equitable principles: *Sleicher* v. *Sleicher,* 251 N. Y. 366; *Sefton* v. *Sefton,* 45 Cal. 2d 872; *Husted* v. *Husted,* 222 Cal. App. 2d 50, 53–54. See also *Robbins* v. *Robbins,* 343 Mass. 247, 251–253, and the discussion in the cases and commentaries first cited above. There is no doubt as to the supporting equity in this case.

The petitioners' brief, in respect of the weekly alimony payments by Schoonmaker, recognizes that it might be inequitable to allow the wife to have support from two former husbands. It seeks to avoid the application of such a principle to the $33,000 ordered paid under the New York

decree by showing that this was all or largely an agreed sum to be paid by Schoonmaker under an option to repurchase certain shares of stock given by him to the wife. There is nothing in this. The evidence tended to show that the shares and their proceeds were intended as provision for the wife notwithstanding an ending of the relationship. The New York decree ordered the payment of $33,000 as alimony. In any case, however, it is the right to support under the New York law, not the award or absence of the award of alimony against the bigamous spouse pursuant to that right, that would make inequitable the enforcing of the agreement in suit.

We hold that in view of the Virginia ceremonial marriage and the New York annulment decree the obligation of the 1956 agreement to support the wife "as long as . . . [she] remains unmarried," is ended.

*Decree affirmed.*