MARJORIE G. HEISTAND vs. PETER J. HEISTAND.

Norfolk.  March 4, 1981. — July 2, 1981.

Present: HENNESSEY, C.J., BRAUCHER, LIACOS, ABRAMS, & NOLAN, JJ.

*Divorce*, Alimony, Modification of judgment.  *Contempt.*

A probate judge did not err in failing to conclude that a wife's participa-
tion in a "marriage ceremony" and cohabitation with a man while she
was still married to her husband constituted a "remarriage" within the
meaning of a stipulation between the husband and wife, thereby re-
ducing the husband's alimony obligation, where there was no evidence
that the man had assumed the obligation to support the wife before his
subsequent legal marriage to her.  [23-26]

A probate judge exercised appropriate discretion in increasing a defend-
ant's support obligation to his three minor children on the basis that
the defendant's salary had increased since the entry of a judgment of
divorce nisi.  [26-28]

A probate judge did not abuse her discretion in permitting a plaintiff to
amend her complaint for modification of a divorce judgment some
seven months after the original filing and one month before the hear-
ing date of the complaint.  [28]

A probate judge did not err in refusing to allow attorney's fees and costs to
a defendant in an action for modification of a divorce judgment and
for contempt.  [28-29]

Although a husband properly interpreted his wife's income tax liability in
accordance with an agreement which had been merged into their
judgment of divorce, he was not entitled unilaterally to reduce the
weekly support payments to his wife and minor children in order to
collect the money due for the wife's liability, and he was, therefore,
properly found in contempt on the ground of arrearage in support pay-
ments.  [29-30]

COMPLAINT for divorce filed in the Probate Court for the
county of Norfolk on October 21, 1977.

Complaints for contempt and for modification, filed on
September 26, 1978, and October 10, 1978, respectively,
were heard by *Dolan, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*David M. Shaw* for Peter J. Heistand.

*Russell H. Mann, Jr.,* for Marjorie G. Heistand.

LIACOS, J. The plaintiff, Marjorie G. Heistand, filed a complaint for divorce on October 21, 1977. A judgment of divorce nisi for the cause of "utter desertion" was entered on September 11, 1978, in the Norfolk Probate and Family Court. This case originated with the plaintiff's complaint for contempt, filed on September 26, 1978, and for modification, filed October 10, 1978. The defendant, Peter Heistand, appeals from judgments for contempt and for modification entered in the Probate Court on October 4, 1979. He appeals as well from the denial of his subsequent motion to amend these judgments.[1]

The Probate Court judge found the defendant in contempt on one of the alleged grounds of arrearage and ordered upward modification of the defendant's child support obligation. The plaintiff not having appealed those aspects of her complaint which were denied, our review is limited to the issues raised by the defendant. He seeks review of these judgments and also of the denial of his request for declaratory relief and for counsel fees. We transferred the case from the Appeals Court on our own motion. G. L. c. 211A, § 12.

The relevant facts are as follows. In June, 1978, the parties entered into a stipulation as to custody and support of three minor children, alimony, and property settlement. The parties commenced performance under this stipulation on June 9, 1978. The provisions of that agreement which are relevant to this appeal are the following. The husband was to pay the wife the sum of $150 a week for her support and the support of three minor children, to be treated as income to the wife, and deductible for tax purposes by the

---

[1] The defendant withdrew so much of his appeal as sought review of the denial of his motion for rehearing on the complaint for modification.

husband, "until the remarriage of Wife." Upon the wife's remarriage, the husband would pay $40 a week for the support of each minor child, or a child support obligation of $120 a week. In addition, the parties agreed to share pro rata the 1978 income tax liability, by a provision set out in the margin.[2]

On June 24, 1978, Marjorie Heistand participated in a so called "marriage ceremony" with one David Lowry whereby they purported to exchange "marriage vows" although Marjorie was still married to the defendant. Contemporaneously with the ceremony, the pair sent out printed announcements to inform their acquaintances that they considered themselves married. Marjorie used the surname Lowry thereafter. At the time, the defendant was informed orally of the arrangement whereby David Lowry, with his children, lived with the plaintiff and her children as husband and wife. On or about June 11, 1978, Lowry paid the defendant the $15,000 by which the plaintiff acquired full title to the real estate which had been the Heistands' family home.[3]

The judgment nisi of September 11, 1978, incorporated the June stipulation, filed with the court on August 4, 1978; the stipulation then merged into the judgment, losing all independent significance. The parties' divorce became absolute on March 12, 1979, and Marjorie Heistand and David Lowry were officially married on March 19, 1979. The defendant paid the plaintiff $150 a week from June 9, 1978, until March 19, 1979. From that March date until May 4, 1979, the defendant paid $120 a week as child support.

---

[2] The parties stipulated as follows: "9. (a) Parties shall file joint tax returns for 1978 and if Wife refuses to sign, Husband is appointed power of attorney to sign for her. (b) Husband shall pay all federal and state taxes resulting from his earnings and income. (c) Wife shall pay all federal and state taxes resulting from her earnings and income."

[3] This was pursuant to the proviso of par. 7 of the stipulation, which provides in relevant part: "Upon payment by Wife to Husband of the sum of Fifteen thousand ($15,000) dollars, Husband shall deed to Wife all his right, title and interest in and to the real estate located at 106 Bristol Road, Wellesley, Massachusetts, subject to a mortgage to Newton Savings Bank, the balance of which mortgage Wife agrees to assume and pay."

After May 4 the defendant reduced his weekly support payments by $40.[4]  This offset he claimed as the plaintiff's share of Federal and State income tax liability for 1978. The parties filed joint tax returns for 1978 as agreed in the stipulation.  On the Federal return the defendant took an adjustment to income in the amount of $5,960 paid to the plaintiff as alimony.[5]  Prorating this amount (and an additional $86 attributable as the wife's income) over the total gross income, the defendant presumed a proportionate tax liability in the plaintiff of 19%, or $757.  The Probate Court judge found no tax liability on the plaintiff's part. Her contempt judgment ordered the defendant to repay the arrearage by adding $40 to his weekly support payments commencing October 20, 1979.  In addition the judge modified the support obligation from $40 a week for each minor child to $60 a week.  We discuss seriatim the defendant's several claims of error in the judgment and conclusions of the Probate Court judge.

1.  *Termination of alimony.*  By his answer to the complaint for modification the defendant sought a declaration that the plaintiff had remarried for purposes of the alimony termination set out in the stipulation.[6]  He claimed further that he should receive a credit for overpayment of alimony.

---

[4] The defendant reduced the first payment of May 4 by $37.  He deducted $40 from all subsequent payments up to the date of the hearing.

[5] The Probate Court judge found that the defendant had paid $6,000 as alimony during 1978.

[6] The provisions which the defendant attempted to invoke are:  "2. Husband shall pay to Wife on each and every Friday commencing June 9, 1978, the sum of One hundred fifty ($150) dollars for Wife and the said minor children which payments shall be treated as income to Wife and deducted by Husband, until the remarriage of wife.

"3.  If Wife shall remarry, Husband shall pay to Wife on each Friday next after such remarriage, the sum of Forty ($40) dollars for each said minor child of the parties, as support, until each child attains age 19 or graduates from high school, whichever is earlier, whereupon the payment of Forty ($40) dollars as provided for each such child shall cease upon that child attaining the age of 19 or graduating from high school, whichever shall come first.  The above payments shall be in lieu of the payments provided for in paragraph 2 above."

He argues that the unofficiated ceremony of June, 1978, though not cognizable as a marriage under the laws of Massachusetts, was a remarriage within the intendment of the parties' agreement. Therefore, the defendant postulates that he overpaid the plaintiff from June 24, 1978, through March 19, 1979. Although the defendant recites relevant law, proper application of that law to the facts at bar does not upset the result below.

The ceremonial exchange of vows between the plaintiff and David Lowry was a legal nullity in this Commonwealth, as the judge below acknowledged. Massachusetts does not recognize common-law marriage. *Commonwealth* v. *Munson*, 127 Mass. 459, 470 (1879). See generally J.F. Lombard, Family Law § 1035 (1967). Contrast *Surabian* v. *Surabian*, 362 Mass. 342 (1972) (despite subsequent annulment, Colorado marriage ceremony was "remarriage" for purposes of alimony termination).

The defendant argues that the probate judge erred in failing to conclude that the actions of the plaintiff in forming a "spousal-oriented" relationship with Lowry constituted a "remarriage" within the meaning of the stipulation. He cites, inter alia, *Ruquist* v. *Ruquist*, 367 Mass. 662 (1975), and *Glazer* v. *Silverman*, 354 Mass. 177 (1968), in support of this argument.

The holding of *Ruquist* v. *Ruquist*, *supra* at 666, might be applicable to the case at bar, if it were shown that the plaintiff had received support from Lowry after the June ceremony. Such a state of facts would, as a matter of equity, trigger the principles of *Glazer* v. *Silverman*, 354 Mass. 177 (1968). Because the law of New York entitled the wife to support from her second husband after annulment of her remarriage, this court in *Glazer* deemed it inequitable to allow the wife to receive support from two husbands. *Id.* at 180. In that case this court also evaluated a ceremonial, invalid marriage according to its effect on third parties. *Id.* at 178. This court declined to hold a husband liable for alimony where he was entitled to rely on the apparent validity of his former wife's remarriage. The *Glazer* court would

not reinstate an alimony obligation "upon disclosure of circumstances to which the husband was not privy and which he has no reasonable means of discovering." *Id.* at 179. Neither of the criteria dispositive in *Glazer* — double support or third-party reliance — is evidence on the record before us.

Similarly, in *Ruquist,* the wife left the State with the minor children of the marriage and cohabited with another in the U. S. Virgin Islands. These actions were taken without the knowledge and consent of the former husband and in violation of the visitation rights of the husband, and of the laws of the Commonwealth. The court upheld a judgment treating this conduct as a "remarriage" under the support agreement.

Although the defendant asserts that Lowry assumed the obligation to support the plaintiff from June 24, 1978, until their legal marriage, he adduced no evidence thereof. Lowry's advancement of the purchase money for the defendant's half interest in the marital home and his expenditures to remodel that home cannot be construed as assuming support of Marjorie. At trial, the plaintiff was questioned only about her expenses and resources at the time of the hearing. By that time the plaintiff was legally Lowry's wife and thus entitled to support from Lowry. See *Davis* v. *Misiano,* 373 Mass. 261, 262 (1977). During the nine months of cohabitation preceding the March 19 solemnization, Lowry had no legal obligation to support the plaintiff, nor was there any evidence of such an undertaking on his part. *Davis* v. *Misiano, supra.* See generally *Sutton* v. *Leib,* 199 F.2d 163, 164 (7th Cir. 1952) (there can be no double support where putative second husband is not legally obliged to support wife). Nor does this record evince an implied obligation, such as an agreement between Lowry and the plaintiff. Contrast *Marvin* v. *Marvin,* 18 Cal. 3d 660 (1976) (enforcing parties' agreement to share property acquired during cohabitation).

Moreover, we cannot extend to this record the equitable principle of *Glazer, supra,* that the defendant legitimately

relied on the wife's changed status. See generally *Gerrig* v. *Sneirson*, 344 Mass. 518, 521 (1962). The facts in the case of *Surabian* v. *Surabian*, 362 Mass. 342 (1972), on which the defendant relies, are also distinguishable. In *Surabian* the wife participated in an apparently valid Colorado marriage ceremony. After that marriage was annulled, she sought reinstatement of alimony. The court's refusal to reinstate alimony implicitly recognized the husband's expectation that a valid remarriage had occurred. See 362 Mass. at 346-347. Here, the defendant was informed almost forthwith of the ceremony and his wife's living arrangement. Having knowledge of the June 24 ceremony, the defendant nevertheless continued to pay the $150 weekly alimony and raised no opposition to the incorporation of the stipulation into the September decree.[7] Thus, this appeal does not confront us with the equities of a situation in which a former wife, by forbearing to remarry, places herself in a position to receive support from two men. See generally Annot., 98 A.L.R.3d 453, 467-474 (1980). We conclude that the judge correctly applied the law of the Commonwealth in denying the defendant's claim that he overpaid alimony.

2. *Upward modification of child support.* The defendant urges that the judgment requiring him to pay $20 more per child each week was unsupported by evidence of a material change in circumstances. In the interests of finality this court has conditioned modification upon a demonstrated change in circumstances after entry of the original decree. *Robbins* v. *Robbins*, 343 Mass. 247, 249 (1961). The determination of the extent and palpability of such change, however, lies in large measure within the discretion of the trial judge. See *Buchanan* v. *Buchanan*, 353 Mass.

---

[7] We do not go so far as to state, although the facts suggest, that the defendant ratified the cohabitation by accepting from Lowry the purchase price for his interest in the real estate. At oral argument, the plaintiff's counsel stated that, in negotiating the terms of the stipulation, the wife agreed to reduce her demand for alimony payment from $220 to $150 a week. Lowry's providing the purchase money for the equity in the marital home appears to have been arranged at the same time.

351, 352 (1967). Unless the judge's order is totally without basis in the record we give deference to her firsthand evaluation of the testimony, presence, and demeanor of the parties. See *Schuler* v. *Schuler*, 382 Mass. 366, 370 (1981); *Buchanan, supra.* See generally J.F. Lombard, Family Law § 2242 (Supp. 1979). In this case the judge rejected the plaintiff's request for modification to require that the defendant pay for the expense of orthodontic treatment for one of the minor children. She correctly applied the standard in ruling that the child's orthodonture needs, which existed prior to the judgment, were not subject to modification. See *Hinds* v. *Hinds,* 329 Mass. 190, 191 (1952).

The judge did order modification on the single basis of the plaintiff's amended complaint, viz., that the defendant's salary had increased since entry of the nisi judgment.[8] There is no inflexible rule constraining the judge's deliberation of the equities of a modification petition. *Whitney* v. *Whitney,* 325 Mass. 28, 30 (1949). The balance may shift according to the facts of each case. Of the several factors which the judge may consider in modifying a decree for child support, G. L. c. 208, § 28, this court has never required that they be accorded equal weight or conjunctive application. In any given case the judge as fact finder may thus attribute greater significance to a change in the husband's net worth than to changes in the needs or life style of the wife or children. Compare *Schuler* v. *Schuler, supra* at 373 (temporary decrease in support provider's income does not alone compel modification); *Whitney, supra* at 33 (court gave preeminent consideration to "immediate and existing needs of the petitioner and the children"). In this instance it is apparent that the judge juxtaposed the husband's salary

---

[8] The judge found that the defendant's salary had increased from $28,496, which was his salary of record at the time of entry of the judgment nisi, to $36,000, at the time of the modification hearing. The defendant claimed, and the judge found, that his actual salary at the time of the nisi judgment was $32,489. Using the last figure, he claimed that a salary increase of $3,511 is not a material or substantial change which justifies the modification order.

increase with evidence of the medical and other costs of the children's support and concluded that the increase was necessary to meet needs which had not been specifically anticipated in the original decree. See *Verdone* v. *Verdone*, 346 Mass. 263, 265 (1963).

The defendant presses the argument that the actual dollar amount of increase in support payments is disproportionate to his after-tax salary gain. He represents that the judge imposed a 50 % support increase despite evidence that his gross salary increased only 10.8 %. The defendant chooses the September, 1978, base salary in reaching this conclusion. See note 8, *supra*. The judge was free, however, to measure the salary increase as the difference between the $28,496 of record as of the judgment nisi and the $36,000 reported at the modification hearing. Whichever calculation the judge in fact used, we see no inequity in requiring that the defendant pay $9,360 in child support when his gross salary is $36,000. See *Whitney* v. *Whitney, supra* at 31 (assessment of one third of monthly salary held not unreasonable for support). The judge exercised appropriate discretion in evaluating the totality of the factual circumstances. See *Schuler, supra* at 370-371, 374.

3. *The judge's leave to amend the complaint for modification.* The defendant contends that the upward modification discussed above followed upon the judge's abuse of discretion in permitting the plaintiff's late amendment of her modification complaint. The motion to amend was filed on May 16, 1979, one month before the June 19 hearing date and some seven months after the original filing. Our reading of the cases cited by the defendant in light of the liberal amendment policy of Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974), indicates no abuse of discretion.

4. *Denial of legal fees.* The defendant moved for attorney's fees and costs in his answers to both complaints. The question of fees was presented by affidavit and in a separate hearing which does not appear in the record presented on appeal. In the absence of the defendant's specification, the judge based her determination on both the judicial discre-

tion standard (G. L. c. 208, § 38) and the bad faith claim standard (G. L. c. 231, § 6F).[9] The judge correctly found no basis in either statute for awarding fees and costs. Compare *White* v. *White*, 358 Mass. 812, 812-813 (1970) (double costs awarded for frivolous appeal from Probate Court judgment which was fully justified by the material facts of record).

5. *Tax liability for 1978.* The defendant's final claim goes to the merits of the contempt judgment. He claims that the weekly offset of $40, taken by him to collect the money due for the tax liability of the wife, was proper in light of the agreement of the parties. See note 2, *supra.* The judge found this offset improper, and hence an impermissible arrearage. The judge found that "[t]he sums paid to the plaintiff might well be considered income in the ordinary use of the word" and that, if both parties had filed separate returns for 1978, the alimony paid would be taxable income to the plaintiff. In light of these findings, her conclusion misconstrues the plain intent of the stipulation. We do not reach this result on the basis of Federal or State tax statutes but on our reading of the intention of the parties as expressed in the agreement. The Heistands' 1978 Federal tax return did not segregate income but did reflect an adjustment to the joint gross income for alimony. We disagree with the probate judge's conclusion that the defendant seeks to have the best of two worlds. The adjusted income figure accrued to the mutual benefit of both taxpayers.[10]

Because the wife's income for 1978 amounted to 19% of the joint gross income, it is consistent with the stipulation that she be liable for that same proportion of the joint tax liability. We conclude the defendant was correct on the

---

[9] In her original conclusions the judge applied G. L. c. 231, § 6F; and in the subsequent rulings on the defendant's motion to alter the original findings and conclusions, she invoked the court's discretionary authority under G. L. c. 208, § 38.

[10] The judge, perhaps by inadvertence, stated that the defendant ought to have claimed the plaintiff's liability as 1978 income. Her liability would have been payable to the defendant in 1979, if at all.

merits of his argument that the plaintiff owed him $757. However, he inappropriately resorted to self-help, unilaterally reducing the support payments and thereby flouting a valid order of the court. The defendant's recourse upon the plaintiff's refusal to pay her share should be to petition the Probate Court for a declaration of the plaintiff's tax liability. Until such time as the defendant may obtain appropriate relief, the contempt must stand.

In conclusion, we affirm the judgment for modification and remand the contempt judgment for further proceedings consistent with this opinion.

*So ordered.*