JUDITH P. THOMSEN *vs.* BRUCE E. THOMSEN. December 24, 1981. The *former husband* (husband) appeals from a modification judgment which, among other things, increased the amount of alimony payable to his former wife (wife) from $37.50 a week to $140 a week, with a cost of living increase based on the Consumer Price Index, and which awarded her counsel fees. His main contention is that there has not been a material change in circumstances adverse to the wife since the parties' divorce in 1969.

We need not decide whether the criteria of G. L. c. 208, § 34, apply to this proceeding of modification under G. L. c. 208, § 37, because the findings of the Probate Court judge, supplemented by uncontroverted evidence in the record, see *Krokyn* v. *Krokyn,* 378 Mass. 206, 208 (1979), support the conclusion that she sufficiently considered the relevant factors in determining a change of circumstances even if G. L. c. 208, § 34, were applicable.[1]

Using the standard in Mass.R.Dom.Rel.P. 52(b) for reviewing findings and giving deference to the judge's "firsthand evaluation of the testimony, presence, and demeanor of the parties," *Heistand* v. *Heistand,* 384 Mass. 20, 27 (1981), we do not disregard the judge's findings or depart from her conclusion that there was a material change in circumstances or from her order revising the alimony to be paid.

The judge found that the wife was unemployed and in dire financial straits at the time of the judgment nisi of divorce in 1969. At that time, she had no funds and obtained part-time employment to help support herself and the minor child.

In September, 1979, with the approval of the wife, the minor son moved to New York where he now resides with the husband and his pres-

---

[1] While the judge did not mention the age or health of the husband, the latter testified that he was forty years old and that his health was "basically pretty good" although he had developed a problem of hypertension. Since the husband objected to any testimony concerning matters predating the original 1969 judgment, he may not claim error as to the absence of findings as to those matters.

ent wife while he attends a private day school. The annual amount paid to the school is about $4,000. The former weekly payment of $50 for child support by the husband was suspended.

The wife now works full time as chief bookkeeper for a Falmouth bank and earns approximately $240 a week. By moving in with her mother during the summer, the wife, when possible, rents her home (the former summer home of the parties) and obtains additional income which enables her to maintain ownership of the house. The wife cannot substantially increase her income because she does not have the requisite education and there is little or no room for growth in her present occupation. An exchange of her present house for a smaller one would not reduce her expenses because of present mortgage interest rates. These findings, together with additional ones concerning the wife's curtailing of her expenditures, the condition of her house, the extent of her savings and her standard of living indicate that the wife lives modestly and has difficulty making ends meet.

By contrast the husband now has a different plane of expenditures. He lives in an apartment in an expensive area of New York and has a 1974 Mercedes automobile furnished him by the corporate advertising agency of which he is president and eighty percent owner. His present wife owns the remaining twenty percent. Between them, the husband concedes, they have a combined income of about $60,000 a year.[2] In addition to five business trips to Europe in a recent year, he took pleasure trips to San Francisco, Florida, Rome and London. Since, however, his present wife is an airline employee, his airfares and those of his son on pleasure trips are essentially free. He lodges in fine hotels and dines in excellent restaurants. He has charge accounts in many luxury stores, although no findings were made as to the extent of their use.

In addition to furnishing the husband with a Mercedes, the agency pays $112 monthly for its garaging and, until the practice was stopped on the advice of the husband's accountant, paid one-fourth of the $610 monthly rent of the husband's apartment. The husband draws on petty cash from the business for many expenses such as lunches and entertainment. Since he is the principal employee, the major portion of the travel and entertainment expense of the agency (shown on the corporation's 1978 income tax return as $17,115) is spent by him. Although he reports only $16,575 as earned income, the judge could reasonably infer that he receives significant benefits from the agency and that his reported income is a figure, to a considerable extent, within his control. Cf. *Pagar* v. *Pagar*,

---

[2] His present wife is employed by an airline and earns approximately $33,000 a year. Considering the circumstance that the husband's receipts from the agency may be inferred to be in excess of his salary as reported, we cannot say that the present wife is being required to contribute to the first wife's alimony or that unreasonable weight is being given to her earnings as affecting his ability to pay alimony. *Silvia* v. *Silvia*, 9 Mass. App. Ct. 339, 342 (1980).

9 Mass. App. Ct. 1, 8 (1980). She found that the present scale of the business is in sharp contrast with the advertising business operated by the husband from his apartment in 1969 at the time of the divorce. At that time, as he testified, he could have been viewed as insolvent. The agency now has four employees in addition to the husband[3] and rents an office in New York at $23,000 a year.

Even if, as it appears, the judge unduly emphasized the agency's gross sales and did not inquire or make findings as to its net income or about charges payable out of gross sales revenue for media, production and other costs, her findings, as supplemented by us from the record, support a finding of a change in circumstances since the entry of the original decree. "The determination of the extent . . . of such change . . . lies in large measure within the discretion of the trial judge." *Heistand* v. *Heistand*, 384 Mass. at 26. The order increasing alimony is not "totally without basis in the record" and is entitled to "deference." *Id.* at 27.

The inclusion of a cost of living increase, although causing greater scrutiny, is also not "totally without basis." The agency's pattern of growth and the husband's expectations for his business could be considered. If these should prove to be substantially erroneous and the cost of living provision becomes onerous, the husband may resort to the Probate Court for modification or for the imposition of an appropriate maximum upon the payments. The judge could conclude that increases in the cost of living will place a greater burden on the wife because of her lower income, even though her income has also increased. *Thompson* v. *Thompson, ante* 917 (1981). See *Kirtz* v. *Kirtz, ante* 141, 147 (1981).

Giving consideration to the statement dated March 31, 1980, of the wife's counsel in support of her application for attorney's fees, we conclude that the amounts awarded were not excessive or improperly assessed against the husband. *Hager* v. *Hager, ante* 887, 889 (1981).

*Judgment affirmed.*

*Samuel S. Robinson & Linda M. Bucci* (*Ellen Zack* with them) for Bruce E. Thomsen.

*Morton A. Glazer* for Judith P. Thomsen.

---

[3] The judge listed the salaries of the four other employees of the agency. They are significant in comparison with the husband's reported income. One employee has only one year of experience and receives $14,500. Another works part time, three to four days a week, and receives $15,000. The third is an artist who works at a hourly rate, and the fourth is his secretary.