Unified Judicial System

 

 
 E. Paul Amundson
Plaintiff and Appellant v.
Pamila K. Amundson
Respondent and Appellee [2002 SD 60]
South Dakota Supreme Court
Appeal from the Circuit Court of The Second Judicial Circuit
Lincoln County, South Dakota
Hon. Richard Bogue, Judge
Catherine V. Piersol and Leah Piersol of Crain of Piersol Law Office Sioux Falls, South Dakota
Attorneys for plaintiff and appellant.
 
Thomas J. Ferrell and Sara E. Eng of Strange, Farrell & Johnson Sioux Falls, South Dakota
Attorneys for defendant and appellee.
 
Considered on Briefs January 7, 2002
Opinion Filed 5/22/2002
#21883
ENG, Circuit Judge
[Â¶1.] E. Paul Amundson (Paul) brought a petition to terminate alimony after his ex-wife, Pamila K. Amundson (Pamila) remarried.  Before the court hearing on the petition, Pamila was granted an annulment of her five month second marriage.  Following the alimony termination hearing, the court determined the alimony payments should continue.  We affirm.
FACTS
 
[Â¶2.] The parties divorced on November 2, 1998, with three children born to their marriage.  The divorce stipulation granted primary physical custody of the minor children to Pamila with $2,500 child support per month.  Pamila was awarded alimony of $15,000 per year for a period of fifteen years, payable from Paul's quarterly bonus.  The alimony was based upon Paulâs $150,000 yearly income and Pamila's $30,000 income.
[Â¶3.] Pamila married Rick Bauermeister (Bauermeister) on June 17, 2000, conditioned upon his representation that his child from a previous marriage would not reside with them on a regular basis.  Immediately, Pamila and Bauermeister experienced problems caused by Bauermeister's failure to fulfill this promise. Pamila shared the problem with her counsel, Sam Goodhope, and talked about seeking a divorce.  Goodhope also talked with Bauermeister regarding this issue.  Goodhope received a letter from Paul's attorney on June 27, 2000 addressing issues between Paul and Pamila and making reference to the termination of Paul's alimony obligation because of Pamila's remarriage.  Goodhope and Pamila talked about divorce and annulment during a subsequent meeting.
[Â¶4.] When Paul petitioned for termination of alimony on August 1, 2000, Goodhope realized he could be a potential witness and referred the matter to Pamila's present counsel.  Pamila filed for an annulment on September 25, 2000.  On November 7, 2000, the marriage was annulled on the grounds of fraud.
[Â¶5.] The case presents this issue: 
Did the trial court err in not granting Paul's request for cessation of alimony based upon Pamila's remarriage and err in not finding fraudulent intent in the facts and circumstances surrounding Pamila's annulment?
 
STANDARD OF REVIEW
[Â¶6.] A trial court's findings of fact shall not be disturbed on appeal unless clearly erroneous.  Pellegrin v. Pellegrin, 1998 SD 19, Â¶ 9, 574 NW2d 644, 646.  The appellate court must give deference to the opportunity of the trial court to "judge the credibility of the witnesses."  Id. (citing Osman v. Keating-Osman, 521 NW2d 655, 657 (SD 1994)).  Absent a definite and firm conviction that a mistake has been made, the trial court's finding of fact will not be overturned under the clearly erroneous standard.  Billion v. Billion, 1996 SD 101, Â¶ 13, 553 NW2d 226, 230.  The trial court's conclusions of law, however, are reviewable pursuant to a de novo standard.  Grode v. Grode, 1996 SD 15, Â¶ 5, 543 NW2d 795, 799.  No deference need be given to the trial court's conclusions of law.  Id. 
[Â¶7.] A trial court's decision to modify alimony is reviewed under the abuse of discretion standard.  Jameson v. Jameson, 1999 SD 129, Â¶ 13, 600 NW2d 577, 581 (citing Gunn v. Gunn, 505 NW2d 772 (SD 1993).  "Abuse of discretion" is defined as an exercise of discretion without purpose or justification and against reason and the evidence presented.  Tesch v. Tesch, 399 NW2d 880, 884 (SD 1987).   In determining whether an abuse of discretion has occurred, the reviewing court does not determine whether it too would have made the same decision, but whether a judicial mind, in light of the law and particular facts of the case, could reasonably reach a similar conclusion. Nelson v. Nelson, 454 NW2d 533, 534 (SD 1990).
DISCUSSION
[Â¶8.] Did the trial court err in not granting Paul's request for cessation of alimony based upon Pamila's remarriage and err in not finding fraudulent intent in the facts and circumstances surrounding Pamila's annulment?
 
[Â¶9.] The trial court is granted discretion to modify alimony by SDCL 25-4-41.  Marquardt v. Marquardt by Rempfer, 396 NW2d 753 (SD 1986) was the first case in South Dakota to declare that remarriage does not automatically terminate an ex-spouse's obligation to pay alimony.  Instead, remarriage merely shifts the burden requiring the recipient to show that extraordinary circumstances exist such that continuation of alimony payments is justified.  Id. at 754.  The standard set in Marquardt was followed in Peterson v. Peterson, 434 NW2d 732 (SD 1989); Steffens v. Peterson, 503 NW2d 254 (SD 1993) and most recently in Culhane v. Michaels, 2000 SD 101, 615 NW2d 580 and Harding-Moyer v. Harding, 2000 SD 126, 616 NW2d 899. 
[Â¶10.] This Court has consistently stated that it is unreasonable for a dependent spouse to receive financial support from a former spouse and a present spouse at the same time.  Marquardt, 396 NW2d at 754 (citing In Re Marriage of Shima, 360 NW2d 827, 828 (Iowa 1985)).  For this reason, this Court has adopted the position that remarriage establishes a prima facie case for termination of alimony absent extraordinary circumstances.  Id.
[Â¶11.] There appears to be no rationale to alter the position in the previous line of cases.  By accepting the remarriage (whether annulled or not) as the shifting event, the party who married has the burden of showing what extraordinary circumstances exist for the continuation of alimony payments.  If the party can show those extraordinary circumstances, the alimony continues.  If they fail to meet the burden, the alimony ends.
[Â¶12.] Another issue considered by the trial court and of importance in considering whether extraordinary circumstances exist for the continuation of alimony is the provision in SDCL 25-3-10 that allows a court to provide for maintenance of a former spouse after an annulment.  The statute allows a court to award alimony after an annulment and has been used by courts to justify the termination of alimony from a former spouse.  However, those cases generally dealt with a situation where the alimony ended and the party to the annulment was now attempting to reinstate the alimony from the first spouse.  See e.g. Glazer v. Silverman, 236 NE2d 199 (Mass 1968); Gaines v. Jacobsen, 124 NE2d 290 (NY 1954).  Under circumstances where time has passed and parties have moved on in their lives, there would be a certain injustice in requiring the reinstatement of alimony.  However, in this case, we are dealing with the request of the alimony payer to terminate the alimony after a short marriage, which resulted in annulment.
[Â¶13.] The question then is whether the wife has shown those extraordinary circumstances that warrant continuation of her former husband's alimony obligation after the annulment.  The trial court found that the wife earns $30,000 or less each year, works during the hours the children are in school, and has a lifestyle similar to what she had when she was married to Paul which will not be maintained unless the alimony continues.  The court further found that the children's lifestyle has remained the same due to the alimony payments and that the husband's income has increased.  Lastly, the court found that the annulment was not a subterfuge.  These factors support the determination by this Court that extraordinary circumstances exist to justify the continuation of the alimony.
[Â¶14.] Since alimony is justified, a question must also be answered as to whether Pamila should receive alimony during the time of her marriage to Bauermeister.  Using the void ab initio standard, the trial court reinstated alimony back to the date of the second marriage.  The South Dakota statutes do not use the word void ab initio, but the term means, "null from the beginning."  Black's Law Dictionary 1568 (7th ed 1999). However, remarriage is the defining act that dictates whether a petition terminating alimony may be brought.  The reason for the annulment should make no difference because the ex-spouse did in fact carry through with a remarriage and therefore has crossed the threshold defining when the court can consider whether alimony should continue or not.  Using this rationale, the court gives the nonparty to the annulment (Paul) an opportunity to file for termination of the alimony which is a prima facie showing and the burden is upon the party to the annulment (Pamila) to show extraordinary circumstance justifying the continuance of the alimony.  Marquardt, 396 NW2d at 754. 
[Â¶15.] Addressing Paul's allegation that there was fraudulent intent in the facts and circumstances surrounding Pamila's annulment, we find the record devoid of evidence that the annulment of the Bauermeister marriage was done with a fraudulent intent.
[Â¶16.] The Marquardt line of cases indicates the party with the burden after the marriage ceremony (Pamila) must show extraordinary circumstances to continue alimony and since the court below found such circumstances, it can use that rationale to allow the payment of alimony during and after the short annulled marriage.  There was no error in its decision to order Paul to pay Pamila alimony from and after the date of Pamila's remarriage.  
[Â¶17.] Affirmed.
[Â¶18.] GILBERTSON, Chief Justice, and SABERS and KONENKAMP, Justices, and GORS, Acting Justice, concur.
[Â¶19.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.
[Â¶20.] ENG, Circuit Judge, for AMUNDSON, Justice, disqualified.