# IN THE COURT OF APPEALS OF IOWA

No. 13-2076
Filed October 1, 2014

IN RE THE MARRIAGE OF BRIAN ROBERT CHARLET
AND PAMILA KAY CHARLET

Upon the Petition of
BRIAN ROBERT CHARLET,
      Petitioner-Appellant,

And Concerning
PAMILA KAY CHARLET,
      Respondent-Appellee.
_____

Appeal from the Iowa District Court for Dickinson County, Patrick M. Carr, Judge.

A husband appeals the economic provisions of the parties' dissolution decree. **AFFIRMED AS MODIFIED.**

Scot L. Bauermeister of Fitzgibbons Law Firm, L.L.C., Estherville, for appellant.

Andrea M. Smook of Cornwall, Avery, Bjornstad & Scott, Spencer, for appellee.

Considered by Potterfield, P.J., Mullins, J., and Eisenhauer, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**EISENHAUER, S.J.**

A husband appeals the economic provisions of the parties' dissolution decree. We affirm the distribution of property in the dissolution decree, including the requirement each party pay one-half of a debt to the wife's ex-husband. We have modified the parties' dissolution decree to eliminate the provision for spousal support. We determine the district court did not abuse its discretion in requiring the husband to pay $5000 toward the wife's trial attorney fees. We award no appellate attorney fees.

### I. Background Facts & Proceedings.

Brian and Pamila Charlet were married on April 16, 2010. It was not the first marriage for either party. Brian had a child from a previous marriage who lived primarily with the child's mother but had visitation with Brian. Brian was responsible for paying child support. Pamila had three children from a previous marriage. Only one of her children was a minor at the time of her marriage to Brian, and this child lived with the parties. Pamila received child support from her former husband, Dr. Paul Amundson. They separated in August 2012, and Brian filed a petition for dissolution of marriage on September 5, 2012.

At the time of the marriage, Brian had net worth of about $660,000. He owned two companies, AP Air and Universal Parts, and earned more than $200,000 per year. He sold these companies for $525,000. When the parties married, Pamila was working part-time for a friend's daycare. She owned a rental house and received $500 net income per month from the rent. She received alimony of $1250 per month from her former husband. Pamila sold the

house during the marriage and received net proceeds of about $7000. She additionally entered the marriage with jewelry worth about $30,000.

When the parties married they moved to a lake property owned by Brian in Arnolds Park, Iowa. They removed a small home on the property and built a new home on the site. They both quit their previous employment and embarked together in an enterprise to "flip" houses for a profit.[1] Brian had money to invest in the enterprise from the proceeds from the sale of his companies, and Pamila had experience in "flipping" houses. They were not as successful as they hoped, and at the time of the dissolution hearing their net worth had decreased.

As noted above, Pamila received alimony from her former husband, Paul. She received $15,000 per year for a period of fifteen years, beginning in November 1998. *Amundson v. Amundson*, 645 N.W.2d 837, 838 (S.D. 2002). In South Dakota, "remarriage establishes a prima facie case for termination of alimony absent extraordinary circumstances." *Id.* at 839. When Pamila and Brian married in 2010, she did not inform Paul of her remarriage and she continued to receive alimony. When Paul's attorney contacted her, she denied she and Brian were married. Paul filed an action in South Dakota seeking to terminate his alimony obligation effective April 16, 2010, the date Pamila married Brian. On June 5, 2013, a South Dakota court determined Pamila should repay Paul $38,750 for alimony she received after she married Brian.

In Iowa, a dissolution decree was issued for the parties on October 8, 2013. The court found the parties had been married for a short period of time

---

[1] The parties testified "flipping" a property meant quickly renovating it and then selling it for a profit. Pamila had been featured on an HGTV television show, "My House is Worth What?" showing a property she had flipped.

and determined, for the most part, the parties should receive the property they brought to the marriage. The court determined each party should be responsible for one-half of the debt to Paul, noting the money had been used for family expenses and Brian "could scarcely have been unaware that his wife was receiving alimony." In total, Brian was awarded net assets of $426,150, and Pamila was awarded net assets of $19,945.[2] The court determined Brian should pay Pamila a lump-sum property settlement of $50,000. The court also ordered Brian to pay Pamila spousal support of $1000 per month for twelve months and then $500 per month for another twelve months. Brian was ordered to pay $5000 toward Pamila's trial attorney fees.

Brian filed a motion pursuant to Iowa Rule of Civil Procedure rule 1.904(2) asking the court to amend or enlarge its findings. The court denied Brian's post-trial motion. Brian now appeals.

## II. Standard of Review.

Our review in dissolution cases is de novo. Iowa R. App. P. 6.907; *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). We examine the entire record and determine anew the issues properly presented. *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). We give weight to the factual findings of the district court, but are not bound by them. *In re Marriage of Geil*, 509 N.W.2d 738, 741 (Iowa 1993). We especially give deference to the district court's findings concerning the credibility of witnesses. *In re Marriage of Farr*, 542 N.W.2d 828, 831 (Iowa 1996).

---

[2] The court's table of assets and liabilities shows the net amount awarded to Pamila was $22,945. However, she was awarded total assets of $42,320 and assigned liabilities of $22,375, leaving her with net assets of $19,945.

### III. Property Division.

Brian claims the division of property is inequitable to him. In matters of property distribution, we are guided by Iowa Code section 598.21 (2011). Iowa courts do not require an equal division or percentage distribution. *In re Marriage of Campbell*, 623 N.W.2d 585, 586 (Iowa Ct. App. 2001). The determining factor is what is clear and equitable in each particular circumstance. *In re Marriage of Miller*, 552 N.W.2d 460, 463 (Iowa Ct. App. 1996).

**A.** Brian contends the district court should not have required him to pay Pamila a lump-sum property settlement of $50,000. He points out his net worth decreased during the marriage, and he asserts it would be inequitable if Pamila left the marriage with a greater net worth than when she entered the marriage. He claims nearly all of the parties' property was traceable to his premarital assets.[3]

Under section 598.21(5), "all property, except inherited property or gifts received or expected by one party," should be equitably divided. *Fennelly*, 737 N.W.2d at 102. Premarital assets are not automatically awarded to the party who owned the property prior to the marriage. *Id.* Property brought to a marriage by one spouse is merely one factor to be considered by a court in crafting an

---

[3] Brian argues in his appellate brief Pamila "lived rent-free in Brian's lake house during the entire fifteen month separation." We first note the parties removed the house that was on the property and built a new home during the marriage, so the current home had not been owned by Brian prior to the marriage. Second, even if the home is considered a premarital asset, there is no requirement it should be awarded to the party who owned the asset prior to the marriage. Third, the parties were still married during the period of separation. Brian cites no authority for the proposition a spouse would be required to pay rent to the other spouse for living in the marital residence while the parties are still married.

equitable property division. *In re Marriage of McDermott*, 827 N.W.2d 671, 678 (Iowa 2013).

The fact Brian brought more assets to the marriage was one factor for the court to consider. *See id.* The court awarded Brian a greater share of the marital assets, recognizing he brought more assets to the marriage and this was a short marriage. We note both parties contributed the assets and income they had to the marital estate. They both contributed to the common enterprise of the marital relationship. Brian was awarded the marital residence. As the court noted, however, Pamila will need to establish a new residence. We find it was equitable for the court to award Pamila a lump-sum property settlement of $50,000.

**B.** Brian asserts he should not have to pay one-half of the debt to Paul. He claims the entire debt of $38,750 should be paid by Pamila because she had improperly continued to receive alimony payments after she remarried. The allocation of marital debt inheres in the division of property. *In re Marriage of Sullins*, 715 N.W.2d 242, 251 (Iowa 2006).

> In the ruling denying Brian's rule 1.904(2) motion the court stated:
>
> The Court finds it difficult to believe, however, that [Pamila] received and spent $30,000 or more of alimony during calendar years 2011 and 2012 without [Brian] noticing the extra household cash flow. [Brian] is a shrewd money manager and a good recordkeeper. The Court is inclined to believe that he was on inquiry notice, if not actual notice, of the alimony received. As [Pamila] points out, a full year's worth of alimony was disclosed on the parties' 2010 joint income tax return. The Court is also convinced that the sums received by [Pamila] were spent by her, in the main, on family expenses.

As noted above, we give credence to these credibility findings by the trial court. We determine Brian was aware Pamila continued to receive alimony from

her ex-husband while she was married to Brian. During the dissolution hearing Brian was asked, "So you were aware that Pam was receiving alimony?" and he responded, "Oh, yeah." Furthermore, Brian benefited during the marriage from Pamila's continued receipt of alimony payments. We agree with the district court it is equitable for Brian to share in the responsibility to pay this marital debt.

### IV. Spousal Support.

Brian contends it was inequitable for the district court to require him to pay Pamila spousal support of $1000 per month for one year and then $500 per month for another year. He points out there was no evidence Pamila needed further education or retraining in order to reenter the job market. He asserts Pamila is capable of supporting herself.

"Property division and alimony should be considered together in evaluating their individual sufficiency." *In re Marriage of Trickey*, 589 N.W.2d 753, 756 (Iowa Ct. App. 1998). Spousal support is not an absolute right. *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). Whether spousal support is proper depends on the facts and circumstances of each case. *In re Marriage of Brown*, 487 N.W.2d 331, 334 (Iowa 1992). When determining whether spousal support is appropriate, we considered the relevant factors found in section 598.21A. *In re Marriage of Hansen*, 733 N.W.2d 683, 704 (Iowa 2007).

At the time of the dissolution hearing Pamila was employed part time at a Hallmark store. There is no evidence to show she is incapable of working full time. In fact, the district court found, "she is capable of self-support." We do not believe the evidence supports the court's conclusion Pamila needed to receive alimony for two years in order to be reoriented into a competitive economy. The

parties here were married for a very short period of time, and we do not believe Pamila's earning capacity deteriorated during the marriage. We conclude the award of spousal support is inequitable, and we eliminate this provision in the parties' dissolution decree.

**V. Attorney Fees.**

**A.** The district court ordered Brian to pay $5000 toward Pamila's trial attorney fees. Trial courts have considerable discretion in awarding attorney fees. *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). In order to overturn the court's decision, a party must show there has been an abuse of discretion. *Id.* Considering the parties' relative financial condition, we determine the district court did not abuse its discretion in ordering Brian to pay $5000 toward Pamila's trial attorney fees.

**B.** Pamila requests attorney fees for this appeal. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *Sullins*, 715 N.W.2d at 255. We consider the needs of the party seeking attorney fees, the ability of the other party to pay, and the relative merits of the appeal. *Id.* We determine each party should be responsible to pay his or her own appellate attorney fees.

We have modified the parties' dissolution decree to eliminate the provision for spousal support. In all other respects we affirm the decision of the district court. Costs for this appeal are assessed to Brian.

**AFFIRMED AS MODIFIED.**