MAURICE HARTOG *vs.* ESTHER HARTOG.

No. 88-P-359.

Middlesex.  January 17, 1989. — March 20, 1989.

Present: PERRETTA, DREBEN, & WARNER, JJ.

*Divorce and Separation*, Child support, Division of property, Modification
of judgment.

The judge who heard a complaint for modification of a divorce judgment
was warranted in finding there had been a material change in cir-
cumstances, inasmuch as one of the parties' four children had developed
a serious, apparently genetic, mental illness since the divorce judgment,
and the youngest child, age nine, appeared to be at risk of developing
the same disorder. [125-128]

A provision in a divorce judgment allowing the wife the exclusive right to
occupy the marital domicil for two years following the judgment, was
properly modified by extending the period an additional eight years,
where the provision was construed as one for child support, and a
material change in circumstances required such a modification in the
best interest of the parties' nine year old child who lived with the wife.
[128-129]

COMPLAINT for divorce filed in the Middlesex Division of
the Probate and Family Court Department on May 31, 1985.

The case was heard by *James M. Sweeney*, J., and a com-
plaint for modification, filed on June 25, 1987, was also heard
by him.

*Allen C. B. Horsley* (*Susan F. Koffman* with him) for
Maurice Hartog.

*Anita W. Robboy* for Esther Hartog.

DREBEN, J. Pursuant to a judgment of divorce dated August
22, 1986, the wife was given the exclusive right to occupy the
marital domicil until August 1, 1988. Thereafter, the home
was to be placed on the market, and, when sold, the net pro-
ceeds were to be divided equally between the parties, the hus-

band to pay the wife at the time of sale the sum of $30,000 from his net share. Claiming changed circumstances, the wife, in 1987, filed a complaint for modification. After a three-day hearing, the judge, on the basis of changes occurring after the divorce, found that the children's mental health required their remaining in the marital home for a longer period, and he modified the judgment to give the wife the right to use the marital domicil for an additional eight years. The division of proceeds upon sale remained as in the original divorce judgment.

The husband appeals claiming that there was no material change in circumstances justifying a different judgment and that, in any event, the judge impermissibly modified a division of marital property. We affirm.

1. *Changed circumstances.* At the time of the divorce, the judge made findings concerning the four children of the parties. Their ages at that time were: Sophie, age twenty-two, Caroline, age twenty, Elizabeth, age eighteen, and Michelle, age seven and a half. Sophie was emancipated and her health was not discussed. As to the others, he found that Elizabeth and Michelle were healthy and good students and that Caroline had psychological problems.

By the time of the modification hearings, however, the picture had changed. There was undisputed evidence that Elizabeth had also developed a serious mental illness.[1]

The findings at the time of both the divorce and modification hearings indicate that the relations between family members were unusually stressful and abnormal. The parties were married in Israel and lived in Holland for six years before coming to this country in 1969. They "were caught between their foreign upbringing and the current culture in this country and

---

. [1] The evidence came from Elizabeth (in the form of her deposition admitted in evidence), from her mother, and from two psychiatrists. Beginning in January, 1987, Elizabeth lost a lot of weight, woke up in the morning shaking, "was just glad to go to bed at night so the next day would just come," and would cry for no reason. The two psychiatrists who had seen Caroline and Elizabeth diagnosed both as having "major" depressive illnesses. The diseases were described as chemical disorders, very likely to be genetic, "an illness that runs in the family."

they could not cope with the pressures." Their arguments became so severe that all communication between them broke down. They still do not speak to each other, and the father, by the time of the divorce, had lost all contact with the three older children. The judge found that he had been unable to adjust to his children as they grew older and had expected "a great deal more from the children than their American environment would allow them to give."

The psychological problems of the children, all of whom live at home, were the focal point in the judge's findings on modification. He described their problems and emotional needs as follows. Both Caroline and Elizabeth have suffered from depression, and Michelle, while presently healthy, "is more vulnerable than a child born to a family without a history of depression." Although the illness is a result of a chemical imbalance, Michelle's psychological well-being is of great importance in combating any potential depression. The father and paternal grandmother refuse to see the children, and the only moral support the children receive is from their mother and from the friends and neighbors in the area in which they live. The judge, in his findings, specifically mentioned the marital home, saying:

> "If these children were to leave this neighborhood because the house had to be sold, . . . this could well be psychologically damaging . . . . There is a psychological and emotional need for the children to remain in a stable environment and . . . the marital domicile is an important factor in this stability. Forcing the Hartog children to move from [it] could cause psychological damage to the minor child, as well as to the other children. The continuity of home, friends, neighborhood and school is more than of usual importance for the Hartog children . . . . It is in the children's best interest that they be allowed to continue to have the use and occupancy of the marital domicile, particularly during the minority of the youngest child, Michelle."

There was strong evidentiary support for these findings. One of the psychiatrists, Dr. Henry Grunebaum, explained the unusual importance to the youngest child of remaining in the marital home.[2]

While the judge in his findings emphasized the increased risk to Michelle because of the emergence of a severe depression in Elizabeth, who had been healthy at the time of the divorce, he described the change in circumstances in different terms:

> "The change in circumstances since the time of the divorce is the fact that it was anticipated at the time of the divorce that the father, the defendant in this matter, would have contact with the children and would provide some psychological support for them. However, since the separation, since the divorce, the defendant has refused to contact the children."

---

[2] Dr. Grunebaum had not been retained by either party. He had been appointed in the matter prior to the judgment of divorce by a probate judge (not the trial judge) to give his recommendations as to visitation and possible therapy for the parents. At trial, after Dr. Grunebaum had been precluded from commenting on the probable effects on Michelle of moving from the home, he wrote to the trial judge on his own initiative without the prior knowledge of the parties. Thereafter, the trial judge reopened the hearings. Dr. Grunebaum testified as follows:

> "[I]n a family with a history of depression in two of the children, there is a history of family vulnerability. In such instances, where the youngest child has not yet reached the age at which the older children have become depressed, she is also likely to be . . . a child with an added risk for depression or vulnerability . . . . Where she is in a family where there is depression, other people are likely to follow, to be vulnerable . . . . [M]ore than usual it seems to me in this case the continuity of home, family, neighbors and friends are important. . . . [Distance] has particular relevance when we are talking about a nine-year old child who has a modest, but not large, scope of mobility . . . . Clearly the older [Michelle] is at the time that she leaves the home, the better."

Dr. Grunebaum also testified that Mrs. Hartog is an anxious woman unsupported by an extended family living in the area and therefore other forms of support such as the home, the school, the neighborhood and the friends are important.

As there was no evidence at the modification hearing that the father had represented that he would see the children after the divorce, the judge's focus on what might have been anticipated is not a valid basis for finding a change in circumstances.

Despite this misstatement, we think it apparent from the evidence and the judge's written memorandum that it was Elizabeth's illness subsequent to the divorce which triggered the finding of a material change. Her depression, following upon Caroline's, strongly suggested that the disease was genetic and that Michelle was a child at risk. The judge was warranted in finding that this increased risk to Michelle made remaining in the marital home of unusual importance to her psychological well being. There was a material change in circumstances. See *Verdone* v. *Verdone*, 346 Mass. 263, 265 (1963); *Heistand* v. *Heistand*, 384 Mass. 20, 26 (1981); *Bush* v. *Bush*, 402 Mass. 406, 411 (1988); *Pagar* v. *Pagar*, 9 Mass. App. Ct. 1, 2 (1980); *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 366-367 (1985).

2. *Is there here an impermissible modification of a final equitable division?* The answer to this question is more difficult. The divorce judgment effected an equitable division as well as providing for alimony and child support. "The parties to a divorce may not relitigate the division of property that already has been the subject of a proceeding under G. L. c. 208, § 34." *Bush* v. *Bush*, 402 Mass. at 409. *Maze* v. *Mihalovich*, 7 Mass. App. Ct. 323, 326 (1979). *Davidson* v. *Davidson*, 19 Mass. App. Ct. at 367.

The divorce judgment provided that certain real estate be sold immediately. As to the marital home, however, the wife was given "the exclusive right to use the marital domicile . . . until August 1, 1988." The two-year provision was explained at the modification hearing by one of the psychiatrists, Dr. Norman Moss. He had, at the time of the divorce, testified that the children's well-being required a minimum stay in the home of two years.

A provision allowing minor children to remain in the marital home is a traditional child support provision. The judge lengthened this period an additional eight years because of

evidence that Michelle's chances of succumbing to a genetic illness would be increased by additional stress. In these circumstances, the extension is to be viewed as a modification of a child support order[3] rather than a change in equitable division. That the order affects the economic value of the husband's distribution is not determinative. Any increase in the amount of child support might also have such an impact. We do not construe G. L. c. 208, § 34, insofar as it provides for equitable division, to have limited the powers of the judge to modify the child support order where, as here, a material change in circumstances was found to require such a modification in the best interest of Michelle.[4]

*Judgment affirmed.*

---

[3] See. G. L. c. 208, § 28.

[4] Although statutory differences make comparisons with other jurisdictions difficult, it is of interest that cases elsewhere consider occupation of the marital home to be an element of support subject to modification and not a division of property which cannot be changed. See. e.g., *Twardosky* v. *Twardosky*, 113 N.H. 438, 439 (1973); *Merrifield* v. *Merrifield*, 122 N.H. 372, 374 (1982); *Lamp* v. *Lamp*, 81 Ill. 2d 364, 372 (1980). See also *Clark* v. *McGuff*, 426 So. 2d 453 (Ala. 1983); *Tucker* v. *Tucker*, 280 Ala. 608 (1967); *Whitfield* v. *Hanks*, 278 S.C. 165 (1982).