JOSE MANUEL PESTANA vs. KELLY FITZGERALD PESTANA.

No. 08-P-1444.

Essex. April 8, 2009. - August 4, 2009.

Present: KAFKER, GREEN, & GRAHAM, JJ.

*Divorce and Separation,* Division of property, Findings.

This court remanded a matter to the Probate and Family Court for clarification of an amended judgment of divorce nisi requiring the wife to list the former marital home for sale, where it appeared from the record that the trial judge held a mistaken understanding of his legal authority under G. L. c. 208, § 34, to defer the sale of the home, and where there were certain other inconsistencies between the amended judgment and the judge's stated findings and rationale supporting it. [781-783]

COMPLAINT for divorce filed in the Essex Division of the Probate and Family Court Department on November 9, 2006.

The case was heard by *John D. Casey,* J.

*Thomas J. Gleason* for the wife.

*William A. Simmons* (*Ellen C. Shimer-Brenes* with him) for the husband.

GREEN, J. The defendant wife appeals from so much of an amended judgment of divorce nisi as requires her to list the former marital home for sale, in order to permit payment to the plaintiff husband of his share of the equity in the property as part of the division of the marital estate. Because it appears from the record that the trial judge held a mistaken understanding of his legal authority to defer sale of the former marital home, and because of certain other inconsistencies between the amended judgment and the rationale supporting it, we remand the matter for clarification.

*Background.* The parties married on August 13, 1994, and have two children, ages eight and twelve at the time of trial. The parties are of limited means. The husband works full time,

earning approximately $420 per week, or $21,840 per year. The wife works part time, earning approximately $130 per week, and also receives $647.08 per week in Social Security disability insurance payments.[1] Pursuant to the amended judgment, the wife has physical custody of the parties' children, and the husband pays the wife $94 per week as child support. Independent of the mortgage on the marital home, the parties have other debts: the wife has credit card and automobile loan debt totaling almost $20,000, and the husband has credit card and automobile loan debt totaling $17,000. The parties are also jointly subject to the possible repayment of $35,000 to the Social Security Administration (SSA), pursuant to a pending claim by the SSA that they previously received that amount in overpayment of benefits.

The principal asset of the marital estate is the marital home.[2] The trial judge found that it had a fair market value of $270,900, with mortgage debt totaling $106,000, leaving net equity of $164,900. The amended judgment, entered on November 28, 2007, directed that the home should be listed for sale by May 15, 2009, and that the net proceeds of sale should be divided equally between the parties.[3] Specifically, the amended judgment directed as follows:

> "The parties shall retain joint ownership of the [marital home]. The Wife shall have sole use and occupancy of the residence and shall be liable for the timely payment of the expenses related thereto . . . . Any necessary repairs which exceed $500.00 shall be shared equally by the parties but shall not be incurred unless advance notice is given to the Husband except in emergency situations. Upon sale of the home, the net amount received shall be shared equally by the parties. The Wife and her mother made contributions to the purchase of the home but these gifts benefitted both parties and have been considered in the division of other

---

[1]Both parties are deaf.

[2]The judgment awarded to each party all items of personal property in his or her possession, except that it awarded to the husband various specific items of property that remained in the wife's possession.

[3]Until the home is sold, the judgment awarded sole use and occupancy of the home to the wife, subject to payment of expenses for mortgage payments (including taxes), insurance, and utilities. The judgment further provided that the parties would share equally any necessary repairs exceeding $500.

assets herein. The real estate shall be listed for sale by May 15, 2009."

In the rationale supporting the judgment, the trial judge addressed the wife's request that sale of the marital home be deferred until the parties' younger child reached eighteen years of age. As explained by the judge,

> "This would mean the Husband would have to wait almost ten years to receive any liquid asset from this marital partnership. Although I have considered the needs of the children and that it would be in their best interests to remain in the home, the Husband clearly needs access to the equity to satisfy his obligations and subsidize his living expenses. The Court has delayed the payment to the Husband for almost one and one-half years to afford the Wife an opportunity to refinance the home or make other accommodations for herself and the children."[4]

The disposition of the marital home was also the subject of discussion during a conference conducted immediately preceding the trial, directed to the possibility of settlement. During that conference, while encouraging the parties to reach agreement on the division of the marital estate, the judge offered the following observation:

> "But if this case goes to trial, then I'm more limited than the two of you are. For example, on the issue about the equity and the real estate. My understanding of the case law is that even if I wanted to have the wife and the children stay in the home until the youngest was eighteen, I probably can't do that legally. I can't — the cases are quite clear that the father doesn't have to wait for his share of the proceeds for eight, nine years."

*Discussion.* "Under G. L. c. 208, § 34, a judge has broad discretion to divide marital property equitably. . . . Of course, the discretion is not unlimited. . . . Judges dividing marital property must make express findings indicating that all the relevant factors under § 34 have been considered. . . . Also,

---

[4]The judge also found that it would be in the best interests of the children for them to remain in their current schools.

the reasons for the judge's conclusions must be apparent in the decision." *Charrier* v. *Charrier*, 416 Mass. 105, 111 (1993) (internal citations omitted). Failure to consider the needs of the parties' dependent children is cause for reversal. *Ibid.*

The judge's written findings and rationale, which are nine single-spaced pages in length, discussed the various § 34, factors in some detail. However, several considerations cast doubt on the portion of the judgment concerning sale of the marital home.[5] First, as we have observed, is the judge's comment during a settlement conference immediately before trial that he was without legal authority to defer sale of the marital home until the children were emancipated. The comment was an incorrect statement of the law. See *Hartog* v. *Hartog*, 27 Mass. App. Ct. 124, 128 (1989) ("A provision allowing minor children to remain in the marital home is a traditional child support provision"); *Tatar* v. *Schuker*, 31 Mass. App. Ct. 534, 535-536 (1991). Indeed, in *LoStracco* v. *LoStracco*, 32 Mass. App. Ct. 1, 4 (1992), we reversed a provision in a judgment requiring sale of the marital home upon remarriage of the custodial parent, since the hypothetical remarriage had no "predictable rational connection" to the psychological or emotional well-being of the children, or their need for stability.[6] To the extent that the judgment flowed from the judge's misapprehension of his authority or the scope of his discretion in applying the § 34 factors, a remand is required.[7]

Moreover, the judge's stated findings and rationale do not

---

[5]As a threshold matter, we observe that the amended judgment does not, strictly speaking, require that the home be sold. Instead, it merely requires that the home be listed for sale by a date certain, and says nothing about the price at which the property should be listed, or the parties' respective obligations in response to any offers that might result. At a minimum, the lack of clarity in the amended judgment would pose many difficulties in its implementation or enforcement. That said, both parties treat the amended judgment as imposing an obligation on the wife to sell the marital home, and we consider it on that basis.

[6]The children in *LoStracco* ranged in age from four to eleven years of age at the time of the judgment, so the period preceding emancipation of the youngest child was significantly longer in that case than in the present one.

[7]At oral argument, the husband's counsel suggested that the judge's comments, made in the context of a pretrial settlement conference, did not reflect the judge's actual view of the law, but were merely intended to encourage the parties to reach agreement on a settlement. Nothing in the record supports the speculative assertion that the judge knowingly would have misstated the law

support the amended judgment, at least in its precise form. The rationale suggests that the judge deferred the obligation to sell the property for a period of time, in order to allow the wife to refinance the property, or to "make other accommodations for herself and the children." However, there are no findings in the record, or evidence to suggest, that the wife had sufficient financial means to refinance the property, or what type of alternative living accommodations she might be able to procure. Moreover, the judgment itself is silent concerning the treatment of any refinancing that might occur; in particular, it contains no provision relieving the wife of the directive to list the property for sale if she should pay to the husband proceeds from a refinancing (or from some other source) in a specified amount.

We comment further that, though "[w]hat weight any of the factors in § 34 shall receive rests within the broad discretion of the judge," *Handrahan* v. *Handrahan*, 28 Mass. App. Ct. 167, 168 (1989), we are aware of no reported case in which a judge ordered the sale of the former marital home despite finding that remaining in the marital home would be in the best interests of the parties' minor children. It is possible that the trial judge in the present case, after weighing all of the § 34 factors, believed that sale of the marital home was warranted, despite potential adverse effects on the children, by reason of the husband's limited means and the need to apply proceeds from such a sale toward his essential living expenses. However, in light of the inconsistencies and ambiguities we have noted, we believe it prudent to remand the matter for clarification.

So much of the amended judgment as requires the wife to list the marital home for sale by May 15, 2009, is reversed, and the case is remanded to the Probate and Family Court for further proceedings consistent with this opinion.

*So ordered.*

---

for the purpose of inducing the parties to reach a settlement, and we decline to ascribe such a purpose to the judge. On the general subject of the use of pressure by a trial judge to produce a settlement, particularly in divorce proceedings, see *Furtado* v. *Furtado*, 380 Mass. 137, 151-152 (1980); and *Slaughter* v. *McVey*, 20 Mass. App. Ct. 768, 769-780 (1985).