NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-207

JOEL A. FISAK

vs.

LATOYA T. FISAK.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Joel Fisak (father) appeals from a judgment of divorce nisi issued by a judge of the Probate and Family Court.  The judgment awards Latoya Fisak (mother) child support in three forms: (1) direct payment from the father, (2) use and occupancy of the parties' former marital home (home or marital home) by the mother and the children, and (3) the father's payment of the mortgage on the home.  The judgment also orders the father to contribute toward repairs necessary to maintain the home; defers the sale of the home and the division of its equity until the youngest child is emancipated; and awards no alimony to either party.  We vacate the provisions of the judgment relating to

child support, the home, and alimony, and we remand for further proceedings.

Background.  "We present the relevant facts and procedure as found by the Probate and Family Court judge, supplemented by undisputed facts in the record, and reserving certain facts for later discussion."  Cavanagh v. Cavanagh, 490 Mass. 398, 399 (2022) (Cavanagh I).

The parties married in 2004 and have three children, who were fifteen, twelve, and three years old at the time of the trial in 2023.  In 2008, after the birth of their second child, the parties' purchased the home.  In 2020, the father filed for divorce, seeking custody of the children, child support, and an equitable division of the marital estate.  Both parties continued to reside in the home until the time of trial.

At trial, the father sought to buy the mother out of her portion of the equity in the home and remain there with the children.  For purposes of context we note that father testified that his motivation was "all about the children, their safety and their comfort and where their friends are, where . . . their quality of life is good.  And not being uprooted or being subjected to any disruption due to this divorce is my primary concern."  He stated that he had no desire for the children to move from the town where they lived, because he knew what "it feels like to be moved around as a kid, and I wouldn't want that

2

on my children."  He also testified that the mother did not have the ability to buy out his interest in the home and did not have a job.

The judgment issued in July 2023, along with findings of fact and a rationale.  The mother was awarded primary physical custody of the children.  The judge ordered child support "whereby the Mother is granted sole use and occupancy of the [parties'] Marital Home, . . . the Father is ordered to timely make all required mortgage payments for the Marital Home, and the Father is ordered to pay the Mother $449.00 per week."  The judge then divided the marital estate and ordered neither party to pay alimony.

In dividing the assets, the judge found that the parties' "largest" asset was the home, with an equity of approximately $114,000.  She also found that the father had minimal cash on hand, limited funds in a credit union account, and substantial credit card and tax debt.[1]

The judge divided the equity of the home equally between the parties and assigned the remaining assets and liabilities to the father.  The judge delayed the distribution of the equity in the home, however, until the youngest child was emancipated.

---

[1] The judgment contains no discussion of the assets or liabilities, if any, in the mother's name.

The judge also ordered that, in the interim, the mother shall not commit waste, and the "parties shall share equally in the cost of any necessary or prudent repairs" to the home, except that, if the mother "does not have the ability to pay her share of the cost," then the father shall pay the entire cost and "be entitled to a credit for the Mother's share" when the home is later sold.

In so deciding, the judge found that it was in the best interest of the children to remain in the home until their emancipation. She credited the father's testimony that the youngest child "would likely have a very difficult time if the Mother was forced to leave the Marital Home," and the testimony of a Department of Children and Families social worker that the children are "doing very well" in their town "and would likely benefit from the consistency of staying in the same school system." The judge found that the mother would "not have an ability to find adequate housing if she was forced to vacate the Marital Home."

The judge concluded that where the mother will "be allowed to remain in the Marital Home," her need for support was reduced, and that where the father will be required to obtain new suitable housing, his ability to pay was reduced. She found that, in these circumstances, it was fair and equitable for neither party to pay alimony to the other. She then calculated

4

$884 per week as the presumptive child support order under the Child Support Guidelines (guidelines).  She determined that the most equitable support was an award of child support to the mother in the form of sole use and occupancy of the home, the father's payment of the mortgage of approximately $435 per week, and direct payments of $449, representing the difference between the mortgage payments and the child support guidelines presumptive order.

Discussion.  1.  Division of the marital home.  Although the father does not challenge the equal division of the marital home, he contends that the judge erred in her handling of the asset in other ways.  He claims that the judge impermissibly "connect[ed] child support with property division" and improperly extended the marital partnership by (1) awarding use and occupancy and mortgage payments as child support and (2) delaying the sale of the home, and therefore the distribution of its value, until the termination of the child support order.  The father relies on language in Cavanagh I, 490 Mass. at 409, stating that "child support and alimony serve distinct purposes" and that "it makes little sense to tie the availability of alimony to the provision of child support." According to the father, because "alimony and property division are specifically intertwined," this language prohibits a judge from connecting child support with property division.

5

To the extent the father argues that Cavanagh I now prohibits a judge from crafting a child support order that permits minor children to remain in a marital home and that delays of the sale of that asset until the children's emancipation are impermissible, we are not persuaded. "A provision allowing minor children to remain in the marital home is a traditional child support provision." Hartog v. Hartog, 27 Mass. App. Ct. 124, 128 (1989). The judge also had the authority to "defer sale of the marital home [and the father's receipt of the proceeds therefrom] until the children were emancipated." Pestana v. Pestana, 74 Mass. App. Ct. 779, 782 (2009). Likewise, although "[p]roperty settlements are designed largely to effectuate a final and complete settlement of obligations between the divorcing spouses," Heins v. Ledis, 422 Mass. 477, 483 (1996), such a disposition as this may be warranted, or even expected, when in the best interests of the parties' children. See Pestana, supra at 783 ("we are aware of no reported case in which a judge ordered the sale of the former marital home despite finding that remaining in the marital home would be in the best interests of the parties' minor children").

Cavanagh I, 490 Mass. at 410, is not to the contrary. Although a judge must consider the separate purposes of child support and alimony, and alternative dispositions as to each form of support, she is still required to consider both the

6

children's need for support and the alimony factors set forth in G. L. c. 208, § 53 (a), together, before "fashion[ing] an order which would be the most equitable for the family before the court."[2] Cavanagh I, supra.

Notwithstanding, the judge's findings of fact and rationale are insufficient to support the judgment. See Pestana, 74 Mass. App. Ct. at 782-783 ("the judge's stated findings and rationale [must] support the . . . judgment"). To begin, the judgment is silent as to how the father will meet his "essential living expenses" where the father leaves the marriage with minimal assets and what appears to be all of the substantial marital debt. Id. at 783. In particular, the judge did not make any findings regarding the possibility of refinancing or borrowing against the equity in the home. See id. Likewise, the judge determined the amount of equity in the home at the time of trial, and could have assigned the home to the mother and ordered her to pay the father his share of equity. See Tatar v.

_____

[2] The father disputes the finding that the mother would not be able to find suitable alternative housing, contending that the judge could reasonably have found instead that the mother would be able to relocate within the town using the proceeds from the sale of the home, if sold. However, "we accept the judge's finding[] of fact" as to the mother's ability to find substitute housing where the finding was not "clearly erroneous," Kendall v. Selvaggio, 413 Mass. 619, 620 (1992), as it was supported by detailed subsidiary findings and by the trial evidence, even if the judge could have reasonably found otherwise.

7

Schuker, 31 Mass. App. Ct. 534, 535-736 (1991) (no abuse of discretion to value property and transfer it to custodial parent on divorce but postpone buyout payment until emancipation of two year old).  See also Downing v. Downing, 12 Mass. App. Ct. 968, 969 (1981).

In addition, the judgment is ambiguous as it relates to the maintenance costs for the home.  The judgment is silent as to whether the father's contributions are to be considered as child support, as a component of property division, or otherwise.  Nor is it apparent from the judge's findings what those costs are expected to be.  See Pestana, 74 Mass. App. Ct. at 782-783 (judgment must be apparent from findings).

2.  Alimony and child support.  The father further argues that the judge erred in calculating alimony and child support by failing to conduct the analysis required by Cavanagh I, 490 Mass. at 410-411; by deviating from the guidelines presumptive amount; by making clearly erroneous findings as to the mother's income; and -- predicated on the premise that some aspects of the ultimate support order should be considered alimony -- by ordering him to make the mortgage payments without finding that the father had the ability to pay alimony and ordering the payments for a period potentially in excess of the durational limits for alimony set forth by G. L. c. 208, § 49.

First, we agree that the judge failed to follow the three-step framework set forth in Cavanagh I, 490 Mass. at 410-411. "Where a request for alimony is made in a case in which child support payments are likely to be ordered, the judge must evaluate the request in three steps." Cavanagh v. Cavanagh, 105 Mass. App. Ct. 620, 628 (2025) (Cavanagh II). In step one, the judge must "calculate alimony first . . . , and then calculate child support . . . using the parties' postalimony incomes." Id. In step two, the judge must "calculate child support first, and then calculate alimony." Id. Finally, the judge must "compare the base awards and tax consequences resulting from steps one and two, and determine the 'most equitable' order for the family." Id., quoting Cavanagh I, 490 Mass. at 410-411. Here, the judge "erred in step one by considering the availability of child support when evaluating the mother's need for alimony" and when evaluating the father's ability to pay alimony. Cavanagh II, 105 Mass. App. Ct. at 629. More specifically, she found that the mother's use and occupancy of the home, "a traditional child support provision," "provides a benefit to the Mother . . . [and] a detriment to the Father" in light of which "it is fair and equitable to order that neither party pay alimony to the other." Thus, the judge did not

consider alimony independently of child support.[3]  This was error.

Furthermore, in fashioning the final order of support, the judge awarded the mother exclusive use and occupancy of the home, but the judge did not consider the value of the use and occupancy.  This must be addressed on remand.

Where we remand for clarification, we need not address whether the child support order was a deviation from the guidelines presumptive figure, except to state that, to the extent that a child support order issues on remand which deviates from the guidelines figure, the judge shall make the findings required to support the deviation.

Furthermore, we cannot conclude that the judge's findings as to the mother's income were clearly erroneous, where they were based on the judge's credibility determinations and where the father did not include the parties' financial statements or any trial exhibits in the record appendix.  See Johnston v.

---

[3] We note that G. L. c. 208, § 53 (b), contemplates alimony awards of amounts up to thirty to thirty-five percent of the difference between the parties' gross incomes.  Here, thirty-five percent of the difference in the parties' incomes, as found by the judge, is greater than the presumptive guidelines order.  Thus -- setting aside the value of the use and occupancy, which is discussed below -- the failure to consider alimony independently could place the mother in a worse position than she would be in if the parties had had no children.  This suggests that a dual order may be appropriate in these circumstances, should alimony otherwise be warranted.

Johnston, 38 Mass. App. Ct. 531, 536 (1995) ("the credibility of a party or other witness who appeared at trial is quintessentially the domain of the trial judge, in which the judge's assessment is close to immune from reversal on appeal except on the most compelling of showings").  Nor do we agree with the father's premise that the mortgage payments, the use and occupancy of the home, or the maintenance costs for the home, were necessarily and indisputably in the nature of alimony, as opposed to child support.  The judge specifically ordered that "neither party shall pay alimony to the other," included all of the father's financial contributions in the "child support" section of the judgment, and deducted the mortgage payments from the guidelines presumptive order when calculating weekly child support.  Thus, "[t]he judge made clear beyond peradventure that the order for use and occupancy of the marital home" and for the mortgage payments "was a form of child support."  LoStracco v. LoStracco, 32 Mass. App. Ct. 1, 4 (1992).[4]

_____

[4] The father makes two arguments in passing which we also find unpersuasive.  First, he contends that the judgment is internally inconsistent where the paragraph describing the sale of the home does not repeat the language ordering reimbursement to the father for his payment of the mother's share of the costs of necessary repairs at the time of such sale.  We do not agree that this reimbursement language needs to be repeated in order to be given effect and conclude that the two provisions of the judgment can be read together.  Second, the father argues that the order requiring him to make mortgage payments, when combined

11

3. <u>Conclusion</u>.  We vacate so much of the judgment as relates to child support, the marital home, and alimony and remand for further proceedings consistent with this memorandum and order.  In all other respects the judgment is affirmed.

<u>So ordered</u>.

By the Court (Meade, Walsh &
  Hodgens, JJ.[5]),

Clerk

Entered:  November 7, 2025.

---

with his weekly support payments to the mother, constitutes a "double dip" where the mother obtains the benefit of the reduction in the principal on the mortgage, citing <u>Trethewey</u> v. <u>Trethewey</u>, 104 Mass. App Ct. 114, 117-118 (2024).  However, "double dipping" describes "the seeming injustice that occurs when" property is divided in the marital estate and "also considered as a source of income" to calculate support.  <u>Id</u>. at 118.  That has not occurred here, although we reiterate our concerns about the possible inequity arising from the mother being awarded both exclusive use and occupancy and equity in the home, without the value of the use and occupancy being considered.

[5] The panelists are listed in order of seniority.