ROSALEEN CHARRIER & another[1] vs. JOHN J. CHARRIER;
NICOLE CHARRIER & others,[2] interveners.

Plymouth. April 8, 1993. - August 11, 1993.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Department of Social Services. Divorce and Separation*, Division of property, Findings.

In a divorce proceeding during which the judge, on his own initiative, added the Department of Social Services as a party and awarded the department legal custody of the couple's three children, the judge was without power to order the department to provide the wife with certain goods and services, where there was no provision of law requiring the department to do so; accordingly, this court reversed a judgment of civil contempt based on such orders. [110]

In a divorce proceeding during which the judge awarded legal custody of the couple's three children to the Department of Social Services, it was proper for the judge to order the department to supervise the couple's visitations with the children; however, adjudications of civil contempt were erroneous, where the visitation orders had been suspended at the time the adjudications were made. [110-111]

In a divorce proceeding, the judge improperly exercised his discretion in awarding the marital home, the couple's sole asset of substantial value, to the husband, where his decision revealed that he had not considered the needs of the couple's three dependent children or the value of the wife's contribution to the marriage. [111-112]

In a divorce proceeding, a judge's decision not to find that the husband sexually abused two of the couple's children had support in the evidence. [112]

In a divorce proceeding during which the judge awarded legal custody of the couple's three children to the Department of Social Services, the judge had no authority to order the department to give certain instructions to the children's therapists. [112]

---

[1]The Department of Social Services was made a party plaintiff by order of the Probate and Family Court judge.

[2]Noelle and Danielle Charrier. The Appeals Court allowed the children's motion to file a brief as interveners.

COMPLAINT for divorce filed in the Plymouth Division of the Probate and Family Court Department on June 18, 1987.

The case was heard by *Sumner Z. Kaplan*, J., and posttrial proceedings were also heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jon Laramore*, Assistant Attorney General, for Department of Social Services.

*Jamie Ann Sabino* for Rosaleen Charrier.

*J. Russell Hodgdon* for John J. Charrier.

*Belle Soloway*, for the minors, interveners, submitted a brief.

O'CONNOR, J. The Department of Social Services (DSS) appeals from a judgment of contempt of an order to provide the plaintiff, Rosaleen Charrier (Rosaleen), with certain household goods. DSS also appeals from a judgment of divorce insofar as it requires DSS to provide Rosaleen with specified goods and equipment, as well as medical, therapeutic, psychiatric, dental, and pharmaceutical services. Lastly, DSS appeals from a judgment of contempt of an order to supervise visits between the defendant, John J. Charrier (John), and the Charrier children.

Rosaleen is also an appellant. She appeals from the judgment of divorce, particularly with respect to the division of marital property, and from a judgment of contempt of the order relative to visitation between the Charrier children and John. The children, interveners, request that we reverse the award of the marital home to John, and that we "reverse the trial judge's finding that there was no sexual abuse of any minor child," and reverse the judge's order that the DSS instruct the children's therapists to work with them toward developing a relationship with their father.

We transferred the case to this court on our own initiative. We now vacate the several judgments of contempt. We reverse the judgment of divorce insofar as it awards the marital home solely to John, and we remand the case to the Probate and Family Court for a further hearing and order consistent with this opinion. We decline to vacate the judge's

finding that none of the children was sexually abused. We reverse the judge's order that the DSS instruct the children's therapists to work with DSS to improve the relationship between John and the children.

· Rosaleen filed a complaint for divorce in June, 1987. On his own initiative, a judge added DSS as a plaintiff and awarded legal custody of the three Charrier children to DSS. During the divorce proceeding, Rosaleen claimed that John had sexually abused the children. In September, 1988, the same judge issued an order requiring DSS to "arrange and pick up" from John, who was then residing at the marital home apart from Rosaleen and the children, various items of furniture and children's clothing and deliver them to Rosaleen and the children. He also ordered DSS to provide Rosaleen and the children with kitchen equipment. DSS did not comply with that order. The judge then ordered compliance within fourteen days. DSS objected, but acquiesced. The judge subsequently issued a similar order with which DSS complied.

Then, in January, 1989, the judge determined that some of the items that had been ordered transferred from the marital home were missing. He ordered DSS to "provide Rosaleen Charrier with such items of furniture, appliances, bedding, books and toys as are reasonably requested by her." Rosaleen was instructed to provide DSS with a list of desired items, and any dispute over their reasonableness was to be resolved by the judge. As a result, Rosaleen's counsel sent to DSS a memorandum listing numerous items that Rosaleen had requested, including living room furniture, kitchen appliances, and children's clothing. In February, 1989, the judge ordered that DSS provide Rosaleen with a couch, two end tables, two lamps, a vacuum cleaner, two baking pans with appropriate utensils, a juice pitcher, a thermometer, a first aid kit, one pair of boots, raincoats and rain hats for two of the children, a book and toy shelf, and a toy box. DSS moved for reconsideration of that order. The motion for reconsideration was denied.

Soon thereafter, the judge denied a motion that John had filed to place the children in foster homes. In a memorandum accompanying that ruling, the judge referred to the motion for reconsideration which he had previously denied. He said, "The Court's Order [denying reconsideration of the February, 1989, order to provide furniture and other items] was based on the stated statutory policies of the regulation of [DSS] allowing for services. The Court's position was based on [G. L. c. 119, § 1], 'Declaration of Policy'; [§ 21], 'Custody'; [§ 26 (1)], and the final paragraph of [§ 26]. [DSS] also argued that [it] is under budgetary constraint, which may prohibit it from carrying out these functions. The Court, however, is only guided by the stated legislative policy as embodied in the Statute."

DSS did not comply with the February, 1989, order, and Rosaleen filed a complaint for contempt against DSS. On August 28, 1989, the judge adjudged DSS to be in contempt and ordered it to "supply Plaintiff all items ordered," as well as to pay her $1,000 as a penalty by September 5, 1989. DSS appealed from the judgment of contempt and, pursuant to DSS's motion, the Appeals Court stayed the order pending appeal.

On January 31, 1990, the judge issued findings of fact and a judgment of divorce together with several orders. The judge placed the children in the legal custody of DSS, having found both parents psychologically incapable of providing proper care. Three other orders, contested by DSS on appeal, were incorporated in the judgment of divorce. The orders provide as follows: "(e) [John] is to have supervised visitation with Nicole and Danielle [two of the three Charrier children] . . . . The supervision will be provided by D.S.S. The cost of supervision will be divided equally between [John] and D.S.S. . . . (j) D.S.S. will provide reasonably necessary services, equipment and facilities to any custodian for the children that are not otherwise provided . . . (k) D.S.S. will provide [Rosaleen] with reasonably necessary medical, therapeutic, psychiatric, dental and pharmaceutical services." DSS and Rosaleen appealed from the divorce judgment and

orders, DSS on the ground that the judge lacked authority to issue the orders referred to above, and Rosaleen on the ground that the judge's award of the marital home to John was erroneous, as was the judge's finding that John had not sexually abused the children. The children are interveners in that appeal.

Just before the issuance of the judgment of divorce, John filed a complaint for contempt. That complaint was amended in December, 1990. As amended, the complaint alleged that Rosaleen had failed to comply with the judge's visitation orders, and that DSS "ha[d] taken insufficient steps to ensure that visitation between [John] and his children [would] occur."

On July 30, 1990, before John's complaint was either amended or acted on, DSS filed a motion to suspend John's visitation rights. On August 3, a judge, other than the judge who issued the judgment and orders appealed from, allowed that motion with the proviso that a further hearing would be conducted within forty-five days. On August 17, John moved for reinstatement of visitation. The original judge consolidated John's complaint for contempt and the visitation matter for hearing. On January 23, 1991, the judge issued a memorandum of findings and an order. He found that the "D.S.S. policy of benign neglect of the Judgment [of divorce] of the Court by consistently failing to impress on [Rosaleen] her duty not to interfere with the visitation order, constitutes contempt" and he ordered DSS to "require the [Children's Center] to debrief Noelle [one of the Charrier children] after each visit to [her mother, Rosaleen] to determine if [she] has done or said anything to adversely effect Noelle's relationship with [John] . . . . If said determination is made by either D.S.S. or the Home, all visitation with Noelle by [Rosaleen] shall be forthwith suspended." The judge also adjudged Rosaleen to be in contempt for "having willfully failed and refused to obey [the court's divorce order] in that [she] frustrated and hindered visits of [John] with his children." DSS and Rosaleen appeal from these judgments of contempt.

We now address the judgment of contempt against DSS, dated August 28, 1989, based on DSS's failure to comply with the February, 1989, order to provide Rosaleen with furniture and other items, and we address the later, but related, order incorporated in the judgment for divorce that required DSS to provide "reasonably necessary . . . equipment and facilities to any custodian of the children that are not otherwise provided [and] with reasonably necessary medical, therapeutic, psychiatric, dental and pharmaceutical services." Those orders were erroneous. A judge does not have authority to order DSS to do anything that DSS is not required to do as a matter of law. *Matter of McKnight*, 406 Mass. 787, 791-792 (1990). Indeed, a court order that would require DSS to do something that the law does not oblige DSS to do would violate the principle of separation of the powers of government by usurping an executive function. *Id.* Nothing in G. L. c. 119, §§ 1, 21, 26, or 26 (1) (1992 ed.), relied on by the judge, requires DSS to provide household or other property items or medical, therapeutic, psychiatric, dental or pharmaceutical services to a natural parent of children in its custody. Furthermore, although it is true, as the judge stated in a memorandum, that "under certain programs [DSS pays] for goods as well as services," such as payments to foster parents for the provision of foster care, see 110 Code Mass. Regs. § 7.130 (1987), there is no cognate provision for parents of children in the legal custody of DSS. DSS did not, and does not, have a legal duty to provide goods or medical, therapeutic, psychiatric, dental, or pharmaceutical services to Rosaleen. The orders requiring DSS to do so should not have been issued. Therefore, any judgment of contempt based thereon must be reversed.

Also incorporated in the judgment of divorce was the order that John "shall have supervised visitation with Nicole and Danielle one day per week . . . . The supervision will be provided by" DSS. Unlike the orders we have discussed above, this order was well within the judge's authority. Nevertheless, the judgments of contempt against DSS and Rosaleen, issued January 23, 1991, were erroneous because, when they

were issued, the visitation order had been suspended and has not been reinstated. "[A] sentence for civil contempt in order to be valid must be for the purpose of enforcing compliance with an outstanding order or decree." *Nickerson* v. *Dowd*, 342 Mass. 462, 470 (1961). Therefore, we vacate the judgments of contempt against Rosaleen and DSS.

Rosaleen and the intervener-children argue that the judge abused his discretion under G. L. c. 208, § 34 (1992 ed.), in awarding the marital home to John. The judge's reasoning was that Rosaleen "has evidenced a fear of living in Scituate and therefore has no need for the marital home. The marriage is a short one. [John] has paid the bills on the home, including the partial repayment to [Rosaleen's mother], of what I find to be a gift of $33,000. He is entitled to the house." Under G. L. c. 208, § 34, a judge has broad discretion to divide marital property equitably. *Drapek* v. *Drapek*, 399 Mass. 240, 243 (1987). Of course, the discretion is not unlimited. *Handrahan* v. *Handrahan*, 28 Mass. App. Ct. 167, 168 (1989), and cases cited. Judges dividing marital property must make express findings indicating that all the relevant factors under § 34 have been considered. *Rice* v. *Rice*, 372 Mass. 398, 402-403 (1977). Also, the reasons for the judge's conclusions must be apparent in the decision. *Bowring* v. *Reid*, 399 Mass. 265, 267 (1987). The judge's decision reveals that he did not consider one important relevant factor. Section 34 provides in relevant part that, "[i]n fixing the nature and value of the property to be so assigned, the court shall also consider the present and future needs of the dependent children of the marriage." In determining how to allocate the sole marital asset of substantial value, the marital home, the judge failed to consider the needs of the three dependent children. A new hearing is required for that reason alone.

Furthermore, a "judgment dividing property that is 'plainly wrong and excessive' cannot stand. See *Redding* v. *Redding*, 398 Mass. 102, 107 (1986)." *Pare* v. *Pare*, 409 Mass. 292, 296 (1991). Rosaleen and John were married for five and one-half years before they separated. Rosaleen's

mother's gift of $33,000 to help finance the purchase of the marital home was a gift to Rosaleen as well as to John, and John's "repayment" of $3,000 did not justify awarding the entire house to him. The judge focused on the narrow issue of which spouse made the mortgage, tax, and homeowner's insurance payments, that spouse being John and, in doing so, he overlooked the principle that the § 34 concept of equitable division must recognize the value of all the contributions of the spouses to the marriage, such as child care. *Pare* v. *Pare, supra* at 297. The fact that Rosaleen may not have wanted to live in the house does not mean that she has no right to share in the equity in the house, which was the sole marital asset of significance. A new hearing is required.

We shall dispose of the remaining two issues with only brief discussion. We do not agree with Rosaleen and the children that the judge's decision not to find that John sexually abused his children was unsupported by the evidence. Properly understood, the contention is that the judge was required to find, but did not, that John did sexually abuse the children. No such finding was required. A trier of fact is not bound to accept the opinion of an expert witness even if it is uncontradicted. *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption,* 376 Mass. 252, 269 (1978). *Commonwealth* v. *Ellis,* 373 Mass. 1, 6 (1977).

Finally, the intervener-children challenge that portion of the order relative to visitation that requires that "D.S.S. shall instruct Nicole's therapist to establish, as a therapeutic goal, regular visitation with [John]," that "D.S.S. shall instruct Danielle's therapist to establish a goal of bonding between Danielle and [John], to include appropriate visitation" and that Danielle's therapist work with a therapist of John's choosing to "establish a time for [John] to resume visitation with Danielle, the length and rules for such visitation." In our view, the challenged portion of the order offends the principle, articulated earlier in this opinion, that a judge does not have the authority to order DSS to do anything that DSS is not required to do as a matter of law. *Matter of McKnight,* 406 Mass. 787, 791-792 (1990).

The several judgments of contempt are reversed. The judgment of divorce is reversed insofar as it requires DSS to provide Rosaleen Charrier with goods, equipment, and medical, therapeutic, psychiatric, dental, and pharmaceutical services. The judgment of divorce is also reversed insofar as it awards the marital home to John Charrier and the case is remanded for further hearing on that issue. The order requiring DSS to instruct the children's therapists in specified ways is vacated.

*So ordered.*