SUPREME JUDICIAL COURT 
 
 BHARATHAN JEEVANANDAM vs. VANIKALA BHARATHAN; DEPARTMENT OF REVENUE CHILD SUPPORT ENFORCEMENT DIVISION, thirdparty defendant

 
 Docket:
 SJC-13687
 
 
 Dates:
 March 5, 2025 - May 28, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, & Wolohojian, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 Commissioner of Revenue. Administrative Law, Agency's authority. Divorce and Separation, Child support, Modification of judgment. Parent and Child, Child support. Statute, Construction. Words, "Support order."
 
 

             Complaint for divorce filed in the Middlesex Division of the Probate and Family Court Department on October 20, 2010.
            A complaint for modification, filed on November 12, 2021, was heard by Theresa A. Bisenius, J., a second amended judgment was entered by her, and a motion for reconsideration was considered by her.
            The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.
            David C. Kravitz, Deputy State Solicitor (Joshua R. Fishbein, Special Assistant Attorney General, also present) for Department of Revenue Child Support Enforcement Division.
            Vanikala Bharathan, pro se.
            Bharathan Jeevanandam, pro se.
            Anne Sheldon, Jamie Sabino, Kate Barry, Laura Gal, Christina Paradiso, & Rachel Biscardi, for Massachusetts Law Reform Institute & others, amici curiae, submitted a brief.
            WOLOHOJIAN, J.  The question presented in this appeal is whether the Department of Revenue (department) has the authority to enforce a judgment requiring one parent to reimburse the other for overpayment of child support where the reimbursement does not itself go to support the child.  The answer to this question is "no" because the department's enforcement authority is confined to judgments, decrees, and orders that are "for the support and maintenance of a child."  G. L. c. 119A, § 1A.  Because in this case the reimbursement did not go to support or maintain the child, we vacate so much of the second amended judgment as required the department to enforce the reimbursement obligation through wage assignment.[1]
            1.  Background.[2]  The mother and father were married in 2004 and had one child, now nineteen years old, who has been diagnosed with autism and intellectual disability.  The parents divorced in 2012, and the judgment of divorce required (among other things) that the father pay child support in the amount of $555 per week to the mother, who had primary physical custody of the child.  The father's child support obligation was to be, and in fact was, enforced by the department. 
            Approximately nine years later,[3] the father filed a complaint for modification requesting termination of his child support obligation on the ground that the child no longer lived with the mother, but was instead enrolled in a full-time residential program paid for by the municipalities in which the parents resided.  On June 28, 2022, a judge of the Probate and Family Court issued a temporary order terminating the father's child support obligation, and the department thereafter stopped collecting child support from the father.  Following a trial on the father's complaint for modification, judgment entered on February 23, 2023, terminating the father's child support obligation retroactively to January 1, 2022.[4]  
            The father next filed a motion for relief from the judgment, by which he sought to recoup from the mother the amount of child support she had received after the retroactive termination date and to require the department to enforce the mother's reimbursement obligation.  That motion was allowed, and an amended judgment entered, nunc pro tunc to February 23, 2023, ordering the mother to repay the father at a rate of eighty dollars per week through the department.  
            On June 30, 2023, the father filed another motion for relief from judgment, on the ground that the department would not enforce the mother's repayment obligation.  The judge conducted a hearing on the motion at which both parents appeared pro se.  During that hearing, the judge asked that a representative of the department be located and participate in the hearing by telephone.  Once that was accomplished, a department attorney informed the judge that the department could not enforce the repayment order because it was not an order for child support.  After further discussion with the judge, the attorney said that, although an ultimate decision was not his "call," he would work with the father to see whether the repayment order could be put "on [the department's] system."  The judge then stated that she would "issue an order today that [the] father is to get in touch with you."
            As it turned out, the judge entered a second amended judgment that required more than that.  In addition to directing the father to get in touch with the department attorney, the second amended judgment required the department (1) to "recalculate the amount of overpayment taking into consideration the [retroactive] termination of support," and (2) to "collect the reimbursement of overpaid child support from mother to father by wage assignment at the rate of $50.00 per week."[5]  
            The department subsequently filed a motion for reconsideration, contending that it lacked authority to enforce the recovery of the debt owed by the mother to the father.  The judge denied the motion, the department appealed from that order, and we transferred the case to this court on our own motion.[6],[7]
            2.  Discussion.  The question to be resolved here is whether the Legislature has authorized the department to enforce a court order requiring one party to reimburse the other for overpayment of child support where the reimbursement will not itself go to the support or maintenance of the child.  See Matter of Elec. Mut. Liab. Ins. Co., Ltd. (No. 1), 426 Mass. 362, 366 (1998) ("An administrative agency has only the powers and duties expressly or impliedly conferred on it by statute").  We review such questions de novo.  Armstrong v. Secretary of Energy & Envtl. Affairs, 490 Mass. 243, 247 (2022).  To determine the scope of the department's authority, "we look to the statute as a whole," Commonwealth v. Maker, 459 Mass. 46, 50 (2011), using "the 'conventional tools of statutory interpretation' and if 'the statute is unambiguous, we give effect to the Legislature's intent,'" Armstrong, 490 Mass. at 247, quoting Goldberg v. Board of Health of Granby, 444 Mass. 627, 632-633 (2005).  "A judge does not have authority to order [an agency] to do anything that [it] is not required to do as a matter of law."  Charrier v. Charrier, 416 Mass. 105, 110 (1993).  Were a court to order an agency "to do something that the law does not oblige [the agency] to do[, it] would violate the principle of separation of the powers of government by usurping an executive function."  Id.
            General Laws c. 119A declares that the "public policy of the commonwealth" is that "dependent children shall be maintained, as completely as possible, from the resources of their parents, thereby relieving or avoiding, at least in part, the burden borne by the citizens of the commonwealth."  G. L. c. 119A, § 1.  That policy is carried out, in part, by the creation of "a comprehensive and effective child support enforcement program through expedited processes for obtaining, modifying and enforcing child support orders."  Id.  
            As part of that program, the Legislature designated the department as the single "IV-D agency" within the Commonwealth, pursuant to Title IV, Part D of the Social Security Act.[8]  Id.  As the State's designated IV-D agency, the department is required, among other things, to enforce "child support orders, including orders for health care coverage, the collection and disbursement of support payments, [and] the enforcement of support orders through civil and criminal proceedings."[9]  G. L. c. 119A, § 2 (a).  One of the department's enforcement tools is to withhold income.  See G. L. c. 119A, § 1A (definition of "IV-D services"); G. L. c. 119A, § 2 (a) (same).  But the department is authorized to use that tool only to enforce support orders as that phrase has been defined by the Legislature.  See G. L. c. 119A, § 5 (department disbursement unit created to collect and disburse payments under "support orders"); G. L. c. 119A, § 6 (collection of arrearages accrued against child support pursuant to court judgment or "support order"); 830 Code Mass. Regs. § 119A.5.1 (2004) (department required to use procedures for efficient and economical receipt of "child support payments from employers").
            Thus, of central importance to this case is the Legislature's definition of "support order," which is
"a judgment, decree, or order, whether temporary, final, or subject to modification, issued by a court or an administrative agency of competent jurisdiction, for the support and maintenance of a child, including a child who has attained the age of majority under the law of the issuing state, which provides for monetary support, health care coverage, arrearages, or reimbursement, and which may include related costs and fees, interest and penalties, income withholding, attorneys' fees, and other monetary relief.  For purposes of enforcement only, 'support order' includes an order for the support of a parent with whom the child is living."  (Emphases added.)
G. L. c. 119A, § 1A.
            The father focuses on the fact that the word "reimbursement" appears in the definition, and argues that its inclusion means that the reimbursement order in this case falls within the definition of "support order."  But we do not construe words in isolation.  Instead, our task is to interpret the word "reimbursement" as it appears in context, using the ordinary principles of statutory construction, which begin with the plain language.  See Matter of the Estate of Mason, 493 Mass. 148, 151 (2023) ("In construing a statute, we begin with its plain language"); Dental Serv. of Mass., Inc. v. Commissioner of Revenue, 479 Mass. 304, 307 (2018), quoting Commonwealth v. Brooks, 366 Mass. 423, 428 (1974) ("words in a statute must be considered in light of the other words surrounding them").  
            Here, the Legislature has determined that whether "a judgment, decree, or order" is a "support order" depends on whether it is "for the support and maintenance of a child."  To be sure, the word "reimbursement" also appears in the definition.  But it does so only as part of a list of examples of the types of payments that may be included in an order "for the support and maintenance of a child."  The fact that a particular payment can be characterized as a "reimbursement" is not enough; the reimbursement must itself be "for the support and maintenance of a child" in order for the reimbursement order to be a "support order" within the statutory definition.
            The reimbursement order at issue in this case was not for the support or maintenance of the child.  Although it is true that the mother's obligation to reimburse the father stemmed from an overpayment of earlier child support, at the time of the reimbursement order the father's child support obligation had been terminated and he had no further child support obligation.[10]  Thus, the mother's payments under the reimbursement order were not for maintaining or supporting the child, who, as we have already noted, was residing in a facility at municipal expense.  Instead, the mother's reimbursement obligation under the order was simply a debt owed to the father and, as a result, could be enforced in a variety of ways -- but not by the department.  See, e.g., G. L. c. 215, §§ 34, 34A (contempt action may be brought for failure to obey order of Probate and Family Court judge); Mass. R. Dom. Rel. P. 4.1, 4.2 (procedures for bringing motion in Probate and Family Court for approval of attachment of property or attachment on trustee process).
            Alternatively, the father argues that the department has authority to enforce the reimbursement order under G. L. c. 119A, § 10A (b), which is entitled "[c]orrections for overpayment, underpayment, or administrative error."  Section 10A (b) provides, in pertinent part, that the department "shall make diligent efforts to recover" payments made to an obligee "if" the Commissioner of Revenue determines that the obligee "was . . . not entitled to the payment."  Although this section imposes an obligation on the department to make diligent efforts to recover certain incorrect payments, that obligation is predicated on the Commissioner of Revenue making a determination that the department "distributed a payment to an individual obligee that was not a child support collection on behalf of the obligee, or that the obligee was otherwise not entitled to the payment."[11]  See The Chicago Manual of Style § 5.228, at 296-297 (17th ed. 2017) (clause introduced by "if" establishes condition).  
            Here, no such determination by the commissioner has been made, and the father's reliance on § 10A (b) is therefore misplaced.  Moreover, the father has not shown any error on the part of the department in withholding income to satisfy the father's child support obligations.  The amounts withheld by the department complied with the terms of the court orders requiring the father to pay child support to the mother.  The reimbursement order therefore did not correct any earlier incorrect payment by the department to an obligee.[12]  See Webster's Third New International Dictionary 511 (2002) ("correction" means "the action or an instance of remedying or removing error or defect").
            3.  Conclusion.  For the reasons set out above, the judge erred in ordering the department to enforce the mother's reimbursement obligation through wage assignment.  See Armstrong, 490 Mass. at 247 (agency actions that are "beyond the scope of authority conferred to it by statute" are "invalid").  The Legislature has not given the department the authority to enforce an order that is not for the support and maintenance of a child.  We accordingly vacate so much of the second amended judgment as directs the department to enforce the mother's reimbursement obligation through wage assignment and remand for further proceedings consistent with this decision.
So ordered.
 
footnotes

 
            [1] We acknowledge the amicus brief submitted by Massachusetts Law Reform Institute, Community Legal Aid, and Northeast Legal Aid.
            [2] The department has moved to strike portions of the father's supplemental record appendix that were not part of the trial court record.  See Mass. R. A. P. 18 (b) (5) (B), as appearing in 481 Mass. 1637 (2019).  Because those materials are not properly before us, we allow the motion and do not consider the stricken materials or the father's arguments that rely on them.  See Gannett v. Board of Bar Overseers, 495 Mass. 1025, 1025 n.1 (2025).
            [3] The father's weekly child support obligation had by this time been reduced to $465, which continued to be enforced by the department.
            [4] The record does not show why the judge chose January 1, 2022, as the specific retroactive date.  The child had entered the full-time residential program on May 20, 2020; the father filed his complaint for modification on November 12, 2021; and he served it on December 11, 2021.  In any event, the father had no child support obligation as of January 1, 2022, or at any time thereafter.
            [5] The second amended judgment also required the mother and father to "alternate claiming [the child] as a child tax credit"; share in the uninsured medical expenses incurred on behalf of [the child] with father paying 80% and mother paying 20% of the expense"; "purchase clothing and incidentals for [the child] as [the mother and father] determine appropriate"; and "communicate by email or text with reference to [the child] and . . . respond to all communications within 48 hours."
            [6] The father contends that the department's appeal was untimely.  He is incorrect:  the department timely filed its notice of appeal on December 5, 2023, fewer than sixty days after the order denying the department's motion for reconsideration was entered on November 13, 2023.  See Mass. R. A. P. 4 (a) (1), as appearing in 481 Mass. 1606 (2019) ("if the Commonwealth or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days" of "the date of the entry of the judgment, decree, appealable order, or adjudication appealed from").
            [7] Subsequently, the judge allowed the department's motion for partial stay of the second amended judgment.
            [8] Title IV, Part D of the Social Security Act is the Federal law governing requirements for a State's collection and distribution of child support payments.  See 42 U.S.C. §§ 654, 654b.  To remain eligible for certain Federal funding, participating States must operate a child support enforcement program through a plan approved pursuant to Title IV, Part D.  42 U.S.C. §§ 602(a)(2), 603.
            [9] In full, G. L. c. 119A, § 1A, defines "IV-D services" as
"child support enforcement services provided by the IV-D agency relating to the location of obligees and obligors, the establishment of paternity or the establishment, modification, or enforcement of child support obligations and health care coverage, the collection and disbursement of child support payments, and any other services and responsibilities required by Title IV, Part D of the Social Security Act, as appropriate, with respect to each child for whom public assistance is provided under Title IV, Parts A and E, and Title XIX, of the Social Security Act, or under other public assistance programs as required by federal or state law, or for whom such assistance was provided and the IV-D agency continues to provide child support enforcement services; and any other child, if an individual applies for such services with respect to the child."
            [10] The father also contends that the reimbursement order was for the support and maintenance of the child because it directed the father to pay eighty percent of the child's uninsured medical expenses.  But this argument mischaracterizes the judge's order, which explicitly tied the reimbursement obligation to the overpayment of child support -- not to the child's medical expenses.
            [11] In full, the portion of § 10A (b) upon which the father relies provides:  "If the commissioner determines that the IV–D agency has distributed a payment to an individual obligee that was not a child support collection on behalf of the obligee, or that the obligee was otherwise not entitled to the payment, the IV–D agency shall make diligent efforts to recover the payment from the obligee, including deducting the amount, or a portion thereof, from future collections of child support made on behalf of the obligee."  G. L. c. 119A, § 10A (b).
            [12] The father's conclusory assertions of misconduct and discriminatory or unethical treatment by the department, which are made without support in the record or citation to legal authority, do not rise to the level of appellate advocacy.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019); Wortis v. Trustees of Tufts College, 493 Mass. 648, 671 (2024).